UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GEZO GOEONG EDWARDS, *et al.*,<br><br>Defendants. | Criminal Nos. 11-129-1, 2, 11 (CKK) |

MEMORANDUM OPINION
(October 23, 2012)

Defendant Gezo Edwards is charged by superseding indictment with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, and one count of carrying a firearm during and in relation to or possessing a firearm in furtherance of a drug trafficking offense. Much of the evidence the Government seeks to present against Edwards at trial was derived---directly or indirectly---from court-authorized wiretaps of two telephones associated with Edwards' co-Defendant William Bowman. For the third time, Edwards asks the Court to suppress the wiretap as illegally obtained, specifically for failing to disclose Edwards as a possible target of the interceptions until the third renewal of the wiretap. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, for the reasons stated below, Defendant Edwards' [515] Motion for Leave to File Defendant's Pro Se Motion is GRANTED,[2] and Edwards' [515-2] Pro Se Motion to Reconsider Denial of Motion to Reconsider Denial of Motion to Suppress Evidence Obtained from Interception of

---

[1] See Def.'s Mot., ECF No. [515-2]; Gov't's Opp'n, ECF No. [517]; Gov't's Suppl. Opp'n, ECF No. [521]; and Def.'s Reply, ECF No. [522].

[2] Although ultimately unpersuasive and legally insufficient, the Court finds the Defendant's motion to reconsider is not entirely frivolous. Therefore, the Court will turn to the merits of the Defendant's *pro se* motion despite the fact he is currently represented by counsel.

Wire Communications in Light of New Evidence is DENIED.

## I. BACKGROUND

The Court detailed the factual history relevant to Defendant Edwards' motion at length in its prior Memorandum Opinion denying Edwards' motion regarding the wiretap, 7/26/12 and 9/16/12 Mem. Opins., ECF Nos. [354, 432], and incorporates herein those opinions in full. In short, the three remaining co-Defendants, Edwards, Bowman, and Henry Williams, are charged with conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine. Superseding Indictment, ECF No. [28], at 2-3. Defendants Edwards and Bowman also each face one count of carrying a firearm during and in relation to or possessing a firearm in furtherance of a drug trafficking offense. *Id.* 6-7.[3] As part of its investigation of the charged conspiracy, the Government obtained orders authorizing the interception of wire communications to and from three cellular telephones allegedly operated by Defendant Bowman, referred to as "TT1," "TT2," and "TT3." 7/26/12 Mem. Opin. at 2-4. The Government initially obtained a wiretap authorization for TT1 on December 7, 2010, but the wiretap was terminated on December 27, 2010, due to a lack of activity. *Id.* at 3. The Government obtained the relevant authorizations for TT2 on January 13, February 11, March 11, and April 8, 2011. *Id.* at 4-5. The affidavit filed in support of the applications for TT2, signed by FBI Special Agent Timothy S. Pak, did not disclose Defendant Edwards as a possible target of the interception until the April 8, 2011 application. *Id.* at 5. The Government first obtained a wiretap authorization for TT3 on March 19, 2011, which was renewed on April 15, 2011. Defendant Edwards was disclosed as a

---

[3] Although the Superseding Indictment charges Defendant Edwards with two weapons charges and Defendant Bowman with three, the parties agreed orally on the record on October 22, 2012, that, pursuant to *United States v. Anderson*, 59 F.3d 1323 (D.C. Cir. 1995), the charges merge into a single count since they derive from a single predicate offense—the alleged conspiracy.

possible target of the TT3 interception in both applications. *Id.* The orders authorizing the wiretaps on TT2 and TT3 permitted the Government to "intercept wire communications to and from the [target telephones], including *any background conversation intercepted in the vicinity of the [the target telephone] while the telephone is off the hook or otherwise in use.*" Gov't Ex. A (1/13/11 Order re TT2), ECF No. [290-1], at 3; *accord* Gov't Ex. B (2/14/11 Order re TT2), ECF No. [290-2] at 4; Gov't Ex. C (3/11/11 Order re TT2), ECF No. [290-3], at 4; Gov't Ex. D (4/8/11 Order re TT2), ECF No. [290-4], at 5; Gov't Ex. E (3/19/11 Order re TT3), ECF No. [290-5]; at 4; Gov't Ex. F (4/15/11 Order re TT3), ECF No. [290-6], at 4.

## II.  LEGAL STANDARD

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, provides that a district court may authorize an application for interception of certain wire, oral, and/or electronic communications. 18 U.S.C. § 2518. Defendant Edwards, as an "aggrieved person," *see* 18 U.S.C. § 2510(11), moves to suppress the contents of the interceptions on the basis that the communications were "unlawfully intercepted." 18 U.S.C. § 2518(10)(a). Section 2518(1) sets forth the requirements for applications seeking Title III authorizations, and provides that applications must include, among other information:

> [A] full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including . . . (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted[.]

18 U.S.C. § 2518(1)(b) ("Subsection b"). Subsection b requires the Government to name an individual as a possible target of a wiretap if the Government (1) "has probable cause to believe that the individual is engaged in the criminal activity under investigation"; and (2) "expects to intercept the individual's conversations over the target telephone." *United States v. Donovan*, 429 U.S. 413, 428 (1977).

## III. DISCUSSION

The Defendant's present motion asks the Court to reconsider its denial of Edwards' previous motion to dismiss on the grounds that "newly discovered facts" demonstrate that, as of March 11, 2011, the Government had probable cause to believe it would intercept Defendant Edwards' conversations in the background of wire communications intercepted over TT2. The "new facts" identified by Defendant Edwards, viewed in the light most favorable to the Defendant, do not justify granting the Defendant's motion.. Although the Government may have been generally obligated to disclose the identity of any person who met the *Donovan* criteria but whose conversations would only be intercepted in the background of the wiretap, the record does not indicate the Government had probable cause as of March 11 to believe it would intercept Defendant Edwards' conversations in the background of TT2 activations. Moreover, Defendant Edwards' motion cannot succeed as the Supreme Court indicated in *Donovan* that any error in this regard by the Government would not be a basis for suppressing the wiretap.

   *A.     Scope of the Government's Disclosure Requirement*

In response to the Court's inquiry, the Government indicated in its opposition that it was unable to find any legal authority to support the position that it was required to "list a person as a target in a Title III application where the person otherwise meets the requirements under *Donovan*, but whose conversations would only be overheard in the background during intercepted wire communications." Gov't's Opp'n ¶ 2. The Court likewise was unable to locate any direct legal authority on this point. Much of the case law concerning background conversations concerns the legality of the use of such conversations if the interception of background conversations was not specifically authorized by the order authorizing the wiretap. *E.g.*, *United States v. Baranek*, 903 F.2d 1068, 1071-72 (6th Cir. 1990) (finding use of

information obtained from the interception of background conversations, although not explicitly authorized by the wiretap order, was permissible pursuant to the "plain view" doctrine); *United States v. Couser*, 732 F.2d 1207, 1209-10 (4th Cir. 1984) (holding the interception of background conversations, even if not permitted on the face of the wiretap order, was not a basis for suppressing the wiretap). However, the plain language of Subsection b—requiring the disclosure of "the identity of the person, if known, committing the offense and whose communications are to be intercepted"—would appear to encompass all communications recorded as a result of the wiretap, regardless of the whether the conversation took place over, or merely in the vicinity of, the target telephone. The *Donovan* Court specifically referenced conversations that would be intercepted "over the target telephone," 429 U.S. at 428, but there is nothing to indicate that the *Donovan* Court considered, much less intended to absolve the Government of any obligation to identify individuals whose conversations may be intercepted in the background of the target telephone. *Cf. United States v. Borch*, 695 F. Supp. 2d 898, 900 (E.D. Mich. 1988) (explaining that background conversations can be considered to have been intercepted "over" the target telephone). In any event, the Court need not resolve the scope of the Government's burden in this respect because the Defendant failed to show that he should have been named as a target even if the *Donovan* requirements applied to backgrounds conversations.

      B.    *The Government Was Not Obligated To Disclose Defendant Edwards As A Possible Target On TT2 Prior To April 8, 2011*

Before addressing the purportedly new facts the Defendant includes in his motion, the Court notes that the Defendant misconstrues one aspect of the Court's September 16, 2012 Memorandum Opinion. Contrary to the Defendant's assertion, the Court did not find that the

Government was required to disclose Edwards as a possible target in the April 8, 2011 application for renewal of the wiretap as to TT2. The Court explicitly found that "the Government was not required to disclose Edwards as a possible target prior to the April 8, 2011 application for TT2," but made no findings as to the April 8 application because the issue is irrelevant: the Government in fact named Edwards as a target in the April 8 application concerning TT2. Not only was the issue irrelevant, neither party presented evidence as to the Government's knowledge as of April 8 such that the Court could draw such a conclusion. Section III.A. of the Court's September 16, 2012 Memorandum Opinion held only that the Government was not required to disclose Edwards as a target in the January, February, or March applications for authorization of wiretap interceptions over TT2. Accordingly, the Court does not address any of the factual claims Defendant Edwards makes regarding events that occurred after March 11, 2011.

The crux of the Defendant's argument is that, as of March 11, 2011, the Government had sufficient evidence to show probable cause that Edwards' was engaged in drug trafficking with Bowman, and Edwards' conversations would be intercepted in the background of TT2. For purposes of this motion, the Court assumes, but does not decide, that Edwards' first contention is correct. As to his second argument, at best, the evidence in the record cited by the Defendant demonstrates the following:[4]

- Between January 27, 2010 and March 11, 2011, pen register data reflected 939 attempted and completed calls between a number associated with Edwards and *TT3*. 3/19/11 Aff. of T. Pak (Aff. in support of application re TT3), ECF No. [247-6], ¶ 23.

---

[4] The Defendant cites various other evidence concerning the Government's knowledge regarding Edwards' involvement in the illicit activity under investigation. The Court does not address that evidence because it relates only to the first prong of the Court's *Donovan* analysis, which the Court presumes was satisfied.

- January 6, 2011: handwritten notes from FBI Special Agent Bevington describe some connection between Bowman, Edwards ("Zoe"), and several purported co-conspirators, Def.'s Ex. 2;[5]

- February 3, 2011: Edwards' vehicle was seen parked in the immediate vicinity of Bowman's address on Quill Point Avenue, Def.'s Ex. 8; Gov't's Suppl. Opp'n at 2 n1.

- February 8, 2011: GPS data regarding TT2 places the phone within 88 meters of the Rolling View Drive residence associated with Edwards, Def.'s Ex. 6a;

- Late February 2011: Confidential Source "4" discloses that he had seen Edwards and Bowman together in the past several months, 4/8/11 Aff. of T. Pak (Aff. in support of application re TT2), ECF No. [247-7], ¶ 35;

- March 9, 2011, GPS data regarding TT2 places the phone within 64 to 98 meters of Edwards' Rolling View Drive address at 12:28 and 12:43 PM. Def.'s Exs. 6b, 6c. TT2 was located within 121 meters of Edwards' Elm Grove Circle address at 2:00 PM. Def.'s Ex. 6d. That same day, calls were attempted or completed with TT2 at 12:14 PM, 12:38 PM, 12:47 PM, 1:34 PM, and 1:44 PM. Def.'s Ex. 7.

- March 10, 2011: the first surveillance of Bowman and Edwards together occurred.

The Defendant also alleges the Government had access to his Facebook account, which included pictures showing Edwards and Bowman at social events together, including Edwards' childrens' birthday parties. Def.'s Ex. 9 (Aff. of Damion Halliburton). Taken together, the evidence cited by Edwards is insufficient to show the Government should have disclosed Edwards as a possible target.

The Defendant's motion implicitly and explicitly requires the Court to make a number of assumptions to draw the conclusion the Defendant urges. The Defendant would have the Court

---

[5] In its Supplemental Opposition, the Government asserts that the "2011" date on the notes was in error, and that the notes were actually transcribed as part of an interview that took place on January 6, 2012. Gov't's Suppl. Opp'n ¶ 1. The Court does not make any finding as to the actual date because, even in combination with the other evidence in the record, notes indicating the Government knew of Edwards and Bowman's association in January 2011 would not establish probable cause under the second prong of *Donovan*.

assume Edwards and Bowman met face to face on all occasions on which GPS data places TT2 within the vicinity of an address associated with Edwards, and that Edwards was in fact in the vicinity of TT2 at the time calls were attempted or completed. Drawing all of the inferences and making all of the assumptions the Defendant requests, the Court could only conclude that the Government had evidence that Defendants Edwards and Bowman were in the same place at the same time on three dates in the month prior to the March 11 application for TT2. Moreover, the Defendant has only identified a single date on which Defendant Bowman may have used TT2 while in the presence of Edwards. Regardless of the Government's knowledge of Bowman and Edwards' relationship generally, during the month prior to the reauthorization at issue, the Government had no evidence to indicate regular in-person meetings between Edwards and Bowman during which Bowman had possession of TT2.

In its opposition, the Government notes that the Defendant failed to identify a single instances in which Edwards' background conversation was intercepted during the first two months of the wiretap of TT2. Gov't's Opp'n ¶ 6. The Defendant contends that this argument is essentially hindsight bias, and is irrelevant to the question of whether the Government should have expected to intercept such conversations as of March 11. Def.'s Reply ¶ 8. The evidence discussed by the parties fall into two categories: (1) information available to the Government before it sought re-authorization for the TT2 wiretap on March 11; and (2) information obtained after the March 11 application, but before the April 8 application in which Edwards was listed as a possible target.[6] The Defendant is correct that the second category, evidence of intercepted background conversations involving Edwards—or the lack thereof—between March 11 and April 8 is irrelevant to the Court's analysis of the Government's burden.

---

[6] The parties also emphasize March 19, the date of the first application regarding TT3.

However, the evidence available to the Government prior to March 11 is directly relevant to the question of what or who the Government should have disclosed as part of the March 11 application. In particular, evidence of what the Government obtained, or did not obtain, from the wiretap of TT2 pursuant to the first two authorizations would strongly inform what the Government could and should have expected from the third authorization, which is sought on March 11. At this point in time, the Defendant has not identified as single activation of TT2 between January 13 and March 11 that intercepted a conversation with Defendant Edwards. Even imputing perfect knowledge of all intercepted conversations to the Government, there is nothing in the record to indicate that prior to March 11, the Government actually intercepted over TT2 any direct or background conversation involving Defendant Edwards. Thus, in drafting the March 11 application concerning TT2, the Government had to weigh evidence of three meetings between Edwards and Bowman, including two during which Bowman may have had TT2 on his person, compared to nearly two months of recorded interceptions over TT2, none of which involved Defendant Edwards. On this record, the Government had no reason to believe Edwards' conversations would be suddenly intercepted over TT2 after March 11, and therefore was not required to disclose Edwards as a possible target of the TT2 wiretap.

The Defendant argues that based on how often he and Defendant Bowman met in-person, the Government should have "inferred" that at some point his background conversations would be intercepted over TT2. It was reasonable for the Government *not* to make such an inference given the circumstances of the investigation. First, although the Defendant cites evidence indicating the Government knew of Edwards' association with Bowman as early as January of 2010, the amount of face-to-face interaction two individuals may engage in naturally may vary over time. In the two months preceding the March 11 wiretap application, the evidence available

9

to the Government indicated only limited face-to-face interactions between Edwards and Bowman. Second, the Government was aware that Defendant Bowman used certain telephones to communicate with certain individuals. Even if the Government should have inferred Edwards would have been intercepted in the background of *a* telephone carried by Defendant Bowman, there is nothing to suggest the Government could or should have inferred that telephone would be TT2. For the same reason, the Defendant's claim that "there is more than a fair probability that known drug associates meet often to conduct their business," did not compel the Government to disclose Edwards as a target; even if true as a general principle, the evidence available to the Government indicated Edwards and Bowman did not meet often to conduct their business, or do so in the vicinity of TT2. The Defendant's argument would derive probable cause from a combination of disproven behavioral assumptions and random chance, evidence far short of what *Donovan* requires.

In sum, drawing all reasonable inferences in Defendant Edwards' favor, the record before the Court does not show that as of March 11, 2011, the Government had probable cause to believe Defendant Edwards' conversations would be intercepted in the background of activations or other recordings made over TT2. Even if the Court were to find probable cause on the record presented by the Defendant, the Court would still be compelled to deny the Defendant's motion. After setting forth the disclosure requirement under Subsection b in *Donovan*, the Supreme Court ultimately concluded that the failure to include a possible target in a wiretap application was not a basis for suppressing the wiretap. *Donovan*, 429 U.S. at 439-440. Bound by this precedent, the Court must deny the Defendant's motion.[7]

---

[7] Curiously, the Government failed to raise this issue until its Supplemental Opposition, filed two days after its initial Opposition. It should go without saying that a complete opposition

## IV. CONCLUSION

For the reasons stated above, the Court once again declines to suppress the wiretap of TT2 and related evidence. Drawing all reasonable inferences in favor of Defendant Edwards, the Defendant demonstrated only that the Government knew Defendants Edwards and Bowman met in-person on three occasions prior to the March 11 request to re-authorize the wiretap on TT2. GPS data indicates Bowman may have had TT2 on his person during these meetings, and on one occasion at least two calls or attempted calls were made to/from TT2 while Bowman was in the vicinity of an address associated with Defendant Edwards. Pursuant to the first two orders authorizing interception of wire communications over TT2 issued on January 13 and February 11, the Government did not intercept any conversations (background or otherwise) in which Defendant Edwards took part. This reinforces the conclusion that the Government lacked probable cause to believe that as of March 11, the Defendant Edwards' conversations suddenly would be intercepted over TT2. The Government's knowledge of Edwards and Bowman's association was not, in and of itself, sufficient evidence to require the Government to disclose Edwards as a possible target of the TT2 wiretap on March 11, 2011. In any case, the Court is bound by the Supreme Court's decision in *Donovan* that even if the Government's omission of Edwards from the March 11 application regarding TT2 was in error, the Court cannot suppress the wiretap on that basis. Therefore, Defendant Edwards' [515] Motion for Leave to File Defendant's Pro Se Motion is GRANTED, and Edwards' [515-2] Pro Se Motion to Reconsider Denial of Motion to Reconsider Denial of Motion to Suppress Evidence Obtained from

---

is expected the first time, and the parties should not assume the Court will provide the parties with an opportunity to supplement deficient pleadings. Moreover, the Court expects that any issues relating to the timing of the Court's disposition of motions filed by either party would be promptly raised. With a lengthy trial ahead, the Court cannot afford delays caused by counsels' failure to bring critical issues to the Court's attention.

Interception of Wire Communications in Light of New Evidence is DENIED.

An appropriate Order accompanies this Memorandum Opinion.

_/s/_
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE
