UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>GEZO GOEONG EDWARDS, *et al.*,<br><br>Defendants. | Criminal Nos. 11-129-1, 2, 11 (CKK) |

MEMORANDUM OPINION
(November 13, 2012)

After the trial commenced, including over seven days of testimony, Defendant Edwards again moved to suppress the wiretap at issue in this case on November 7, 2012. The Defendant's [548] *Pro Se* Motion to Reconsider Denial of Motion to Reconsider Denial of Motion to Suppress Evidence Obtained From Interception of Wire Communication in Light of New Evidence ("Defendant's Motion") represents the Defendant's second *pro se* motion, and fourth motion overall on this subject. As with the Defendant's prior motions, the Defendant fails establish any legal basis for suppressing the wiretap. Therefore, for the reasons stated below, the Defendant's motion is DENIED.

## I. BACKGROUND

The Court exhaustively outlined the factual and procedural background of this in its prior opinions, which the Court incorporates in full herein. *See generally* 7/26/12 Mem. Opin., ECF No. [354]; 9/16/12 Mem. Opin., ECF No. [432]; 10/23/12 Mem. Opin., ECF No. [524]. Briefly, Defendant Gezo Edwards is charged by superseding indictment with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, and one count of carrying a firearm during and in relation to or possessing a firearm in furtherance of a drug

trafficking offense. Superseding Indictment, ECF No. [28], at 2-3, 6.[1] Throughout the course of its investigation, the Government obtained wiretaps on three cellular telephones associated with Defendant William Bowman. The Defendant's motion focuses on the affidavits filed in support of the wiretap authorization on one of those cellular telephones---"TT2." The Government obtained the relevant authorizations for TT2 on January 13, February 11, March 11, and April 8, 2011. 7/26/12 Mem. Opin. at 3-5. The affidavit filed in support of the applications for wire interceptions of TT2, signed by FBI Special Agent Timothy S. Pak, did not disclose Defendant Edwards as a possible target of the interception until the April 8, 2011 application. *Id.* at 5.

The Government first obtained a wiretap authorization for TT3 on March 19, 2011, and Defendant Edwards was disclosed as a possible target of the TT3 interception in the supporting affidavit. *Id.* at 5. Agent Pak's affidavit indicated that pen register information obtained from TT3 reflected 939 attempted and completed calls between Defendant Edwards and TT3 between January 27, 2010 and March 11, 2011.

The orders authorizing the wiretaps on TT2 and TT3 permitted the Government to "intercept wire communications to and from the [target telephones], including *any background conversation intercepted in the vicinity of the [the target telephone] while the telephone is off the hook or otherwise in use.*" Gov't Ex. A (1/13/11 Order re TT2), ECF No. [290-1], at 3; *accord* Gov't Ex. B (2/14/11 Order re TT2), ECF No. [290-2] at 4; Gov't Ex. C (3/11/11 Order re TT2), ECF No. [290-3], at 4; Gov't Ex. D (4/8/11 Order re TT2), ECF No. [290-4], at 5; Gov't Ex. E (3/19/11 Order re TT3), ECF No. [290-5].

---

[1] Counts Nine and Ten of the Superseding Indictment charge the Defendant with separate violations of 18 U.S.C. 924(c). The Government has conceded that it can only pursue a single count against Defendant Edwards in light of the single predicate offense.

## II.  LEGAL STANDARD

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510 *et seq.*, provides that a district court may authorize an application for interception of certain wire, oral, and/or electronic communications. 18 U.S.C. § 2518.  Defendant Edwards, as an "aggrieved person," *see* 18 U.S.C. § 2510(11), once again moves to suppress the contents of the interceptions on the basis that the communications were "unlawfully intercepted."  18 U.S.C. § 2518(10)(a).  Section 2518(1) sets forth the requirements for applications seeking Title III authorizations, and provides that applications must include, among other information:

> [A] full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including . . . (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted[.]

18 U.S.C. § 2518(1)(b) ("Subsection b").  Subsection b requires the Government to name an individual as a possible target of a wiretap if the Government (1) "has probable cause to believe that the individual is engaged in the criminal activity under investigation"; and (2) "expects to intercept the individual's conversations over the target telephone." *United States v. Donovan*, 429 U.S. 413, 428 (1977).  Section 2518(1)(e) further provides that the application must contain:

> a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire, oral, or electronic communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application[.]

## III.  DISCUSSION

Styled as a motion to reconsider, the Defendant's motion simply re-argues his previous *pro se* motion in response to Court's findings in its October 23, 2012 Memorandum Opinion. The Defendant argues that the Government should have disclosed him as a possible target of the

interception insofar as it had probable cause to believe Defendant's conversations would be recorded as part of "background conversations" of activations intercepted as part of the wiretap of TT2.[2]

As a threshold issue, the Defendant acknowledges that the Supreme Court held in *Donovan* that a violation of subsection b is not a basis for suppressing a wiretap. Def.'s Mot. at 17. *See Donovan*, 429 U.S. at 439-440; 10/23/12 Mem. Opin. at 10. To avoid this issue, the Defendant incorporates an argument made by counsel in the second motion regarding the wiretap: that, even if a violation of subsection b itself is not a basis for suppressing the wiretap, the Court may suppress the wiretap on the basis that the Government also violated subsection e by not disclosing information known regarding Defendant Edwards. However, as the Court noted when it initially rejected this argument, the Defendant must first show that he should have been disclosed as a target pursuant to subsection b before the Government has any obligation to disclose information regarding Edwards pursuant to subsection e. 9/16/12 Mem. Opin. at 7-8. As set forth below, the Defendant once again fails to make the threshold showing; accordingly the Court does not reach the issue of whether or not a violation of subsection e would justify suppressing the wiretap.

In terms of the merits of his motion, the Defendant first argues that it is natural to assume Defendant Bowman and Defendant Edwards met in person. Even if the Court credits this assumption, the relevant question under *Donovan* is not whether Bowman and Edwards ever met in person, or even did so on a routine basis. Rather, the relevant inquiry is whether Bowman and

---

[2] For purposes of this motion, the Court once again assumes without deciding, that the Government had probable cause to believe Edwards was engaged in the criminal activity under investigation and that the Government had an obligation to disclose possible targets that would be intercepted *only* as part of background conversations.

Edwards met often enough under circumstances that made it probable that Edwards' conversations would be intercepted in the background activations over one (TT2) of the three cellphones associated with Defendant Bowman.

The Defendant's second argument addresses the Government's claim, in opposition to his prior *pro se* motion, that prior to March 11, 2011 the Government had *not* intercepted Edwards' voice in the background of any activations of TT2. As the Court noted in its October 23, 2012 Memorandum Opinion, the fact that over the course of the first two authorizations to intercept wire communications with TT2, the Government did not intercept Edwards over TT2 strongly supported the Government's claim that as of March 11, 2011, it lacked probable cause to believe it would intercept Edwards over TT2 going forward. 10/23/12 Mem. Opin. at 9. The Defendant now argues that the Government could not recognize Edwards' voice as of March 11, 2011, and thus the fact they could not identify his voice on any interceptions prior to that date was irrelevant to their probable cause determination. Def.s Mot. at 4-5. Setting aside the fact the Government did not intercept any communications involving Edwards during the first two authorizations with respect to TT2, viewing the evidence in the light most favorable to the Defendant, the record still fails to show the Government had probable cause to believe Edwards' conversations would be intercepted over TT2 as of March 11, 2011.

The Defendant devotes much of his motion to establishing a "pattern"---after Defendant Bowman received a shipment of cocaine, he and Defendant Edwards would meet in person before Defendant Bowman began distributing the drugs to his (Bowman's) customers. Def.'s Mot. at 13. According to the Defendant: "the FBI knew it was highly probable Edwards would meet Bowman face-to-face while Bowman [told his customers] 'aint nothing…soon though,'" but before Bowman informed his customers "'got word for you.'" *Id.* at 14. On this basis, the

Defendant argues the Government had probable cause to believe Edwards' conversations would be intercepted over TT2 by at least the February 2011 affidavit, and certainly the March 2011 affidavit.

There are a number of issues with the conclusion the Defendant urges the Court to draw from these "facts." The evidence cited in the record indicates that the first evidence of this so called pattern was discovered in February; the Government could not have discerned it was a pattern the Defendants would repeat until after it had occurred more than once. The second occurrence did not take place until less than one week before the Government submitted the March 11 application to renew the wiretap on TT2. With the benefit of hindsight bias, the Defendant now points to a "pattern," which, as of March 2011, may reasonably have been viewed as nothing more than a coincidence. Second, at best, this "pattern" reflects what the GPS data cited in the Defendant's previous motion demonstrates: on two occasions in early February and March 2011, Defendants Edwards and Bowman met in person while Defendant Bowman was in possession of TT2. Third, assuming for the sake of argument that the Government recognized this supposed pattern and could predict with absolute certainty that Bowman and Edwards would meet in person following the next shipment, this still fails to show probable cause. *See* 10/23/12 Mem. Opin. at 7. The Defendants meeting once or twice per month while Bowman carries TT2 in his pocket does not create a reasonable likelihood that the Government would intercept Edwards' conversations over TT2.

In the Defendant's view, having explained away the lack of interceptions involving Edwards during the first two authorizations with respect to TT2, three pieces of evidence are key: (1) records indicate over 7,000 activations over TT2 during the course of the wiretap authorizations; (2) records indicate Defendant Bowman carried TT2 on his person daily; and (3)

6

the "natural assumption" that, given their relationship, Bowman and Edwards met in person on a regular basis.  The Defendant contends that, in combination, this evidence demonstrates that the Government had probable cause to believe it would intercept Edwards' conversations over TT2 as of March 11, 2011.  *Assuming* each of these assertions is true—and the Court is forced to make that assumption because the Defendant does not cite evidence in the record[3] for these contentions—other evidence in the record demonstrates why the Government lacked probable cause.  Despite routinely carrying TT2 and making or receiving thousands of phone calls with TT2, Defendant Bowman only carried the phone to in person meetings with Defendant Edwards on two occasions prior to March 11, 2011: February 8 and March 9.  In other words, over the course of nearly sixty days, there were only two days on which Defendant Edwards' was in the vicinity of TT2.  On this basis, the Government did not have probable cause to believe it would intercept Edwards' conversations over TT2 going forward.

## IV.  CONCLUSION

Defendant's present motion is nothing more than a re-hash of his prior motion, only with weaker evidence than previously presented.  The "natural assumptions" the Defendant would have the Court (and the Government) make, in combination with the actual evidence of Defendant Edwards' interactions with Defendant Bowman, confirm the conclusion the Court has reached on two prior occasions: as of March 11, 2011, the Government did not have probable cause to believe that it would intercept Defendant Edwards' conversations over interceptions of TT2. Accordingly, Defendant Edwards' [548] *Pro Se* Motion to Reconsider Denial of Motion to Reconsider Denial of Motion to Suppress Evidence Obtained From Interception of Wire

---

[3] Instead, the Defendant attaches what appears to be pen register data for TT3 (Def.'s Ex. 1), and line sheet summaries of interceptions over TT2 between February 2 and 4, 2011 (Def.'s Ex. 2).

Communication in Light of New Evidence is DENIED.  An appropriate Order accompanies this Memorandum Opinion.

                                                                    */s/*
                                          **COLLEEN KOLLAR-KOTELLY**
                                          UNITED STATES DISTRICT JUDGE