UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

GEZO GOEONG EDWARDS,

Defendant.

Criminal No. 11-129-1 (CKK)

MEMORANDUM OPINION
(February 26, 2014)

On November 16, 2012, Defendant Gezo Goeong Edwards was convicted of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine from on or about January 2009 and continuing through at least April 26, 2011. Verdict Form, ECF No. [651]. Prior to trial, which began in September 2012, the Government submitted a pre-trial notice pursuant to 21 U.S.C. § 851 regarding Defendant's prior conviction for Distribution of a Controlled Dangerous Substance. *See* Notice, ECF No. [19]. The Government argues that as a result of this prior conviction, pursuant to 21 U.S.C. § 846, Defendant is subject to a sentence of not less than 20 years imprisonment nor more than life. *Id.* at 2. Following trial, the Government moved for an upward departure pursuant to the Sentencing Guidelines and filed a Notice of Intent to Present Evidence of Uncharged Criminal Conduct. *See* Govt.'s Mot. for Upward Departure ("Def.'s Mot."), ECF No. [684]. As part of Defendant's history and characteristics, the Government sought to present evidence of three homicides and a home invasion, for which Defendant had never been charged, and one homicide for which Defendant was charged, but the charge was later dismissed in the District of Columbia Superior Court.[1]

---

[1] The Government filed murder charges against Defendant Edwards on May 8, 2013,

Def.'s Mot. at 2. The Government urged the Court to impose an upward variance in Defendant's Guidelines sentence and impose a sentence of life imprisonment. *Id*. at 2. On November 5 and 7, 2013, the Court held a lengthy evidentiary hearing during which the Government presented evidence regarding Defendant's alleged participation in the four homicides and the home invasion. The Government presented testimony from three witnesses, which the Defendant had the opportunity to cross-examine at length. The Defendant chose to call no witnesses, but entered documentary exhibits into evidence. The parties subsequently filed supplemental sentencing memoranda with the Court addressing the legal propriety of the Court considering such previous criminal conduct in determining Defendant's sentence and the sufficiency of the evidence presented at the evidentiary hearing. *See* Def.'s Opp'n to Govt.'s Mot. for Upward Departure ("Def.'s Opp'n."), ECF No. [849]; Govt.'s Reply to Def.'s Opp'n. ("Govt.'s Reply"), ECF No. [852].

This Memorandum Opinion exclusively addresses Defendant's argument regarding the propriety of enhancing Defendant's sentence pursuant to 21 U.S.C. § 851 and the Government's Motion for an Upward Departure based on the homicides and the home invasion about which the Government presented evidence during the November 5 and 7, 2013, evidentiary hearing. The Court will also address Defendant's Opposition to the Government's Introduction of Victim Impact Statements and Motion to Recuse, which Defendant filed shortly before sentencing. *See* Motion to Recuse, ECF No. [859]. All other matters related to the sentencing of Defendant Edwards will be addressed separately by the Court.

### I. 21 U.S.C. § 851 Enhancement

---

relating to the 1998 Chamberlain/Tollerson double homicide. The Government never indicted Defendant Edwards for this murder and dismissed the matter on November 29, 2013. Def.'s Opp'n. at 10.

As discussed above, prior to trial, the Government submitted a pre-trial notice pursuant to 21 U.S.C. § 851 regarding Defendant's prior conviction. This conviction has the effect of raising the mandatory minimum in this case from ten to twenty years. In his Memorandum in Aid of Sentencing, Defendant argues that the 21 U.S.C. § 851 enhancement "does not apply because it raises the mandatory minimum without a jury finding in violation of the *Apprendi* line of cases." *See* Defendant's Memorandum in Aid of Sentencing ("Def.'s Mem."), ECF No. [850], at 13. Defendant cites to the Supreme Court's recent decision in *Alleyne v. United States* in which the Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S.Ct. 2151, 2155 (2013). However, Defendant properly concedes that the Court in *Alleyne* continued to recognize the exception to the *Apprendi* rule for the fact of a prior conviction. *See id.* at 2160, n.1 ("In *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), we recognized a narrow exception to this general rule for the fact of a prior conviction. Because the parties do not contest that decision's vitality, we do not revisit it for purposes of our decision today."). Defendant does not contest the underlying conviction on which the enhancement is based. Moreover, Defendant points to no legal authority questioning the prior conviction exception to *Apprendi* and courts have continued to apply this exception post-*Alleyne*. *See, e.g., United States v. Cook*, --- Fed.Appx. ---, 2014 WL 52749, *8 (6th Cir. 2014) (holding that the "district court's approach at sentencing complied with *Alleyne*" where the court "relied on the drug quantity found by the jury, the government's § 851 information, and [defendant's] admission to the charged prior felony drug offense to increase the statutory mandatory minimum penalty applicable to his drug convictions to ten years to life imprisonment."); *United States v. Croft*, 533 Fed.Appx. 187, 188 (4th Cir. 2013) (denying defendant's challenge to the increase of his mandatory minimum sentence based on the district court's finding of defendant's prior

convictions by a preponderance of the evidence because *Alleyne* "did not disturb *Almendarez–Torres v. United States*, 523 U.S. 224 (1998), which authorizes a district court to apply an enhanced sentence based upon its finding of applicable prior convictions . . . ."); *United States v. Stanley*, ---Fed.Appx.---, 2013 WL 6645423, *3 (10th Cir. 2013) (same). Accordingly, the Court denies Defendant's challenge to the increase in his mandatory minimum pursuant to 21 U.S.C. § 851.

## II. Upward Departure Based on Uncharged Conduct

Defendant also challenges the Government's Motion for an Upward Departure in Defendant's sentence based on three homicides and one home invasion in which Defendant allegedly participated, but for which he has never been charged, and one homicide for which Defendant was charged, but the charge was later dismissed in the District of Columbia Superior Court. The Government argues that "regardless of the defendant's Guidelines range . . . the Court may consider this conduct in imposing an upward variance in the defendant's Guideline sentence," which the Government contends warrants a sentence of life imprisonment. Govt.'s Mot. at 2. In his Opposition to the Government's Motion for an Upward Departure, Defendant effectively makes two arguments as to why the Court should not consider these prior uncharged acts of violence in calculating Defendant's sentence. First, Defendant argues that sentence-enhancing facts must be proven to a jury beyond a reasonable doubt and that the Court's reliance on this evidence would violate the Defendant's Fifth and Sixth Amendment rights. Def.'s Opp'n. at 17. Second, Defendant argues that the Court should summarily reject the evidence presented at the evidentiary hearing because it is unreliable and Defendant was not given a "meaningful opportunity to rebut" the evidence. *Id*. at 3.

Each of Defendant's arguments have been considered and rejected by the D.C. Circuit and

other circuits. "[L]ong-standing precedents of the Supreme Court and [the D.C. Circuit] establish that a sentencing judge may consider uncharged or even acquitted conduct in calculating an appropriate sentence, so long as that conduct has been proved by a preponderance of the evidence and the sentence does not exceed the statutory maximum for the crime of conviction." *United States v. Settles*, 530 F.3d 920, 923 (D.C. Cir. 2008)); *see also United States v. Bras*, 483 F.3d 103, 108 (D.C. Cir. 2007) (acknowledging that courts may rely on both acquitted and untried conduct when proven by a preponderance of the evidence); *United States v. Dorcely*, 454 F.3d 366 (D.C. Cir. 2006) ("consideration of acquitted conduct violates the Sixth Amendment only if the judge imposes a sentence that exceeds what the jury verdict authorizes"); *United States v. Watts*, 519 U.S. 148, 157 (1997) ("a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proven by a preponderance of the evidence"). This is true even if, as Defendant characterizes it, the uncharged conduct is unrelated to the offense of conviction. For example, in *United States v. Moore*, 484 Fed.Appx. 758 (4th Cir. 2012), *cert. denied*, 133 S.Ct. 676 (2012), the Fourth Circuit found the sentencing judge's upward variance to the statutory maximum of life in prison reasonable where the defendant was convicted of one count of possession of ammunition by a convicted felon and one count of conspiracy to possess ammunition after having been convicted of a felony, but the Government had proven by a preponderance of the evidence the "[d]efendant's violent and criminal history, including his possible participation in several [uncharged] murders." *Id.* at 764. The sentencing judge considered the evidence of the uncharged murders in light of the 18 U.S.C. § 3553(a) factors and found that the "history and characteristics of the defendant" and the need for deterrence and "to protect the public from further crimes of the defendant" warranted an upward variance. *Id.* at

764-65. *See also United States v. Santiago*, 495 F.3d 820, 825-26 (7th Cir. 2007) (upward variance reasonable for defendant convicted of possession of crack cocaine with intent to distribute and with unlawful possession of ammunition by a felon where sentencing judge found by a preponderance of the evidence that defendant had participated in an unrelated and uncharged murder, which the Court considered in evaluating the 18 U.S.C. § 3553(a) sentencing factors).

Contrary to Defendant's contentions, courts have repeatedly held that a sentencing judge's consideration of such uncharged conduct does not violate the Fifth and Sixth Amendments, so long as the conduct is proved by a preponderance of the evidence. *See, e.g., United States v. Powell*, 650 F.3d 388, 391-93 (4th Cir. 2011) (holding that the Confrontation Clause does not apply at sentencing), *cert. denied*, 132 S.Ct. 350 (2011); *United States v. Grubbs*, 585 F.3d 793, 798-803 (4th Cir. 2009) (holding that, consistent with the Fifth and Sixth Amendments, a district court may consider uncharged conduct in determining a sentence, so long as that conduct is proven by a preponderance of the evidence); *Santiago*, 495 F.3d at 824 (rejecting defendant's argument that sentencing judge could not consider uncharged conduct in calculating defendant's sentence because the Sixth Amendment, as interpreted in *Apprendi v. New Jersey,* 530 U.S. 466 (2000), and *United States v. Booker*, 543 U.S. 220 (2005), required any fact that increased defendant's sentence to be found beyond a reasonable doubt by a jury); *Dorcely*, 454 F.3d at 372 ("a sentencing court may 'consider[ ] a defendant's past criminal behavior, even if no conviction resulted from that behavior,' without violating due process." (quoting *Nichols v. United States*, 511 U.S. 738, 747 (1994))); *United States v. Miller*, 450 F.3d 270, 273-74 (7th Cir. 2006) (holding that neither *Crawford* nor the combination of *Crawford* and *Booker* extend the defendant's rights under the Confrontation Clause to sentencing proceedings).

Moreover, Defendant's argument that he was not given a meaningful opportunity to rebut the evidence of Defendant's involvement in the homicides and home invasion, is not correct. Prior to the evidentiary hearing, Defendant received substantial discovery related to each of the criminal incidents, including the names of witnesses, cooperating witnesses and informants, as well as their statements, grand jury transcripts of witness testimony, police reports, forensic reports, jail calls, and investigator notes. Govt.'s Reply at 4. These discovery materials also included information about other possible suspects and Defendant made use of this information in his cross-examination of the Government's witnesses at the evidentiary hearing. *Id.* Defendant also had the opportunity to call his own witnesses, an opportunity that he did not take, and to introduce documentary evidence. *See Miller*, 450 F.3d at 274 ("The court offered [defendant] an opportunity to test his uncle's statements [at the sentencing hearing] in a way that could sift fact from fiction; the decision not to use this opportunity squelches [defendant's] argument based on the due process clause."). To the extent that Defendant is arguing that the Government's reliance on hearsay precluded him from a meaningful opportunity to rebut the Government's allegations, the Court notes that it is well established amongst the circuits that "the admission of hearsay testimony at sentencing does not violate confrontation rights." *Bras*, 483 F.3d at 109 (assembling cases). Accordingly, the Court finds that the evidence the Government presented at the evidentiary hearing of Defendant's participation in four homicides and a home invasion may properly be considered by the Court in determining Defendant's sentence.

Nevertheless, the Court finds that the Government has not presented sufficient evidence upon which the Court can conclude, by a preponderance of the evidence, that Defendant actually participated in the homicides or the home invasion. Although the Court credits the testimony of

the witnesses called by the Government during the evidentiary hearing, the Court finds that the testimony presented was either based on attenuated hearsay or lacked sufficient detail to link Defendant to the specific crime the Government alleged he participated in. The Court briefly addresses below the evidence related to each alleged criminal event.

As an initial matter, the Court notes that after the evidentiary hearing, Defendant submitted a sworn affidavit denying all of the criminal conduct for which the Government had presented evidence. *See* Gezo Edwards Affidavit, ECF No. [850-6], at ¶¶6-9. Defendant also submitted a sworn affidavit from Terrence Jones regarding the 1998 double homicide, in which Jones denies having any dispute with anyone at Clifton Terrace, where the homicide occurred. *See* Terrence Jones Affidavit, ECF No. [850-4], at ¶ 7. Even though Defendant had the opportunity to call witnesses at the evidentiary hearing, Defendant did not testify nor did he call any witnesses. The affidavits now submitted by Defendant offer broad, non-detailed denials of the Government's allegations providing the Court with no way to evaluate their credibility. Thus, the Court shall give little weight to these affidavits. In any event, the Court finds that the Government has not met its burden of establishing Defendant's participation in the alleged criminal events by a preponderance of the evidence.

### A. *1996 Murder of James Wilson*

Sergeant Dave Blazer was called to testify at the evidentiary hearing about the 1996 murder of James Wilson. Sergeant Blazer's testimony was based on notes from two interviews that were conducted, one in 1998 and the other in 2011, with cooperator Larry Williams. The interview and the notes were conducted and prepared by another law enforcement officer—not Sergeant Blazer. Tr. 11/5/13 at 102:9-21. The information Williams provided during the interviews was relayed to him by two other individuals, Sean Lucas and Gregory Hall, who

recounted to Williams, the day following the Wilson murder, what happened at a party Lucas, Hall, and Defendant attended the night before where Defendant was involved in a fight with Kevin Simon and injured. *Id.* at 104:13-106:10. Lucas told Williams that after the fight, Lucas and Defendant left the party in a black Ford Mustang and drove to the location where they believed Simon resided. *Id.* at 105:22-106:4. Williams was not at the party nor at the scene of the homicide later that night. *Id.* at 104:23-25; 179:1-14. Sergeant Blazer testified that Williams spoke with Defendant Edwards the day after the Wilson murder and, during that conversation, Defendant admitted to Williams that he killed someone who was not the intended target. *Id.* at 106:25-107:2. While the Court credits Sergeant Blazer's testimony, on cross-examination, Sergeant Blazer testified about statements to the police given by Hall and Lucas—who, unlike Williams, *were* at the party—which reveal inconsistencies as to what happened at the party, who started the fight, who was injured, and the motive for the fight. *See id.* at 183:1-189:7; 11/7/13 Tr. 9:21-10:13, 11:22-13:9, 23:3-25:7, 31:25-33:21. Sergeant Blazer also testified about several inconsistencies in Williams' statements to the police. *See* 11/7/2013 Tr. at 7:1-13:9. The Court is cognizant that a sentencing judge may rely on hearsay in sentencing a defendant, however, the hearsay must have indicia of reliability. *See Bras*, 483 F.3d. at 109 ("although the sentencing court may rely on evidence that would be inadmissible at trial, the evidence must nonetheless have "sufficient indicia of reliability to support its probable accuracy."). The evidence presented to the Court by Sergeant Blazer involved layers of hearsay and, at times, internally inconsistent hearsay. When determining whether a defendant admitted such a serious charge as killing an individual, the Court should have a better opportunity to evaluate the credibility of the person to whom the defendant made the admission. Ultimately, for the Court to find by a preponderance of the evidence that Defendant was involved in this homicide, the Court would have to credit that

9

the events at the party, which provided the motive for Defendant to commit the homicide, took place in a specific manner because Defendant only admitted to Williams that he killed someone who was not the intended target. However, the Court has only been presented with conflicting evidence as to what actually occurred at the party and whether Defendant Edwards was even involved. Accordingly, the Court finds that the Government has failed to meet its burden of proving by a preponderance of the evidence that Defendant was involved in the 1996 murder of James Wilson.[2]

### B. 1998 Murder of Che Chamberlain and Joseph Tollerson

Nathaniel Harrison and Willie Moorer, Defendant's co-defendants in the present case, testified at the evidentiary hearing about this double murder. Harrison testified that around 2002 he overheard an argument between Defendant and Terrence Jones during which the defendant stated words to the effect of, "[e]verytime you get into something you call me, when you had them dudes up Clifton . . . I had to handle that for you – Clifton." 11/5/13 Tr. at 26:16-25. However, Harrison never testified that Defendant ever admitted during that argument or at any other time that he killed Chamberlain or Tollerson. Harrison also testified that he did not know anything about the homicides of Chamberlain and Tollerson at Clifton Terrace. *Id.* at 45:23-46:23; 52:6-8. Harrison only testified that he had heard on the street that Defendant had supposedly killed someone in the Clifton Terrace area. *Id.* at 27:10-24. Harrison also testified

---

[2] Accordingly, the Court will not consider the Victim Impact Statements from Mr. Wilson's family filed by the Government as they are not relevant. Moreover, the Government in its response to Defendant's Opposition to the Government's Introduction of Victim Impact Statements and Motion to Recuse moved the Court to strike Defendant's Opposition as duplicative of his previous filings. *See* Govt.'s Response to Defendant's Opposition to Introduction of Victim Impact Statements, Opposition to Defendant's Motion for Recusal and Government's Motion to Strike Defendant's Pleading, ECF No. [860], at 1. As the Court is not considering the Victim Impact Statements, the Court DENIES the Government's Motion to Strike as MOOT.

that around 2004, he was at a club with Defendant when Defendant stated that he had killed a "dude" in Clifton Terrace. *Id.* at 30:16-25. The Court finds this testimony insufficient to tie Defendant to the specific killings of Chamberlain and Tollerson.

Moorer testified that around 2002 he heard from Allen Butler who in turn had heard from someone else that Defendant and another individual had "shot some people" up at Clifton Terrace, *id.* at 62:20-63:1, and that Defendant had killed one victim and the other individual killed the second victim, *id.* at 64:2-4. In addition, Moorer testified that in 2010 Defendant admitted to him that he killed two individuals at Clifton Terrace, but Defendant did not identify the victims. *Id.* at 70:12-71:22, 96:22-97:2. Thus, as with Harrison, Moorer's most pertinent testimony was that Defendant allegedly admitted to a murder, but Moorer was unable to provide any additional details and, most importantly, any details linking Defendant to the specific victims. As there was nothing in either witness' testimony linking Defendant to the Chamberlain and Tollerson homicides, the Court finds this evidence insufficient to establish by a preponderance of the evidence that Defendant was responsible for the 1998 murder of Che Chamberlain and Joseph Tollerson.

### C. 2000 Home Invasion

Sergeant Blazer testified during the evidentiary hearing that he interviewed informant Allen Butler who admitted that he, Earl Davis, and Defendant participated in a 2000 home invasion on Florida Avenue. 11/5/13 Tr. at 109:3-14, 113:16-20. Butler explained that during the course of the robbery they confronted the victim demanding money and drugs. *Id.* at 117:2-3. Butler further informed Sergeant Blazer that when they could not find what they were looking for, Defendant Edwards "grabbed one of the small children [in the house], brought him to his father, put the barrel of the gun inside the child's mouth, and threatened the father that he was

11

going to kill the child unless he produced the money and the drugs." *Id.* at 107:3-8. Butler also explained that Davis was shot during the invasion and that he and Davis drove to the Howard County Hospital after the invasion. *Id.* at 117:20-118:2. Much of what Butler told Sergeant Blazer during the interview was corroborated by contemporaneous police reports from the scene of the home invasion and the hospital to which Davis and Butler fled afterwards. *Id.* at 118:15-120:3, 126:7-21. In addition, the victim-child corroborated Butler's specific story about the child having a gun placed in his mouth during the invasion. *Id.* at 125:2-20. However, other than Butler's identification of the assailants, the only other description of the assailants on the record presently before the Court does not match Edwards' physical characteristics. Sergeant Blazer testified that witnesses outside of the home at the time the three men forced their way into the home described the men as approximately 6'2" in height. 11/7/2013 Tr. at 69:11-70:8. It was established during the evidentiary hearing that Defendant is a much more diminutive 5'4". Tr. 11/5/2012 at 133:10-11; 11/7/13 at 69:4-70:11. Accordingly, without an opportunity to observe Butler and evaluate his credibility as to Defendant's alleged admission, the Court finds at most that the evidence as to Defendant's involvement in the 2000 home invasion is in equipoise.

### D. *2001 Murder of Michael Neal*

Finally, Sergeant Blazer testified that he interviewed Letitia Boyd, wife of victim Michael Neal, in 2005 or 2007 about the 2001 murder of Neal. Boyd informed Sergeant Blazer that when assailants entered their home during the night, her husband hid beneath the bed sheets while she hid in the closet. 11/5/2013 Tr. at 132:6-21. Sergeant Blazer also testified about an interview he conducted with Butler in which Butler told him that Defendant had admitted to killing Neal and told Butler that Neal had been hiding under the sheets at the time. *Id.* at 134:22-135:11. While Defendant's alleged admission to Butler is corroborated by Boyd's reference to

12

her husband hiding under the sheets, the description of the assailants given by Boyd conflicts with Butler's identification of Defendant Edwards as the shooter. Boyd told Sergeant Blazer that she was an eye witness to the gun battle between her husband and one of the assailants and had the opportunity to see the height, eyes, and skin coloring of the individual who shot her husband. Although Boyd told Sergeant Blazer that the shooter was approximately the height of Defendant, she described the shooter as having memorable "brownish-greenish light colored eyes." *Id.* at 133:2-9; 11/7/2013 Tr. at 83:23-84:3. Defendant was confirmed during the evidentiary hearing as having "dark colored eyes." 11/7/2013 Tr. at 84:16. Moreover, Boyd did not identify Defendant in a photo line-up. 11/5/2013 Tr. at 134:11-14. Ultimately, another individual whose blood matched that found at the scene of the crime was convicted of the Neal murder. 11/7/13 Tr. 72:24-73:2.

As the Court explained with the evidence the Government presented of the 1996 Wilson homicide, when determining whether a defendant admitted such a serious charge as killing an individual, the Court should have a better opportunity to evaluate the credibility of the person to whom the defendant made the admission. Here, the Court had no opportunity to observe Butler testify and gauge his credibility as to Defendant's alleged admission. Accordingly, the Court finds at most that the evidence as to Defendant's involvement in the 2001 Neal murder is in equipoise.

### *E. Conclusion*

In sum, the Court finds the Government has not proven Defendant's participation in the four homicides and the home invasion by a preponderance of the evidence. The Government relied substantially on hearsay evidence, which often involved several levels of hearsay. Although a sentencing judge may consider and rely on hearsay evidence, the Court finds that

when determining whether someone participated in such serious crimes as murder, the Court should have a better opportunity to evaluate the credibility of those to whom the defendant allegedly admitted his culpability.  Here, the individuals to which Defendant allegedly admitted his culpability either did not testify or did not offer sufficient detail in their testimony to link Defendant and his admission to the specific murder the Government was seeking to prove. Accordingly, the Court finds the Government has not met its burden of proving these four instances of criminal conduct by a preponderance of the evidence.  The Court will not consider this conduct in calculating Defendant's sentence.

### III. Motion to Recuse

On February 24, 2014, three days before the sentencing of Defendant Edwards, the Government filed several Victim Impact Statements related to the 1996 homicide of James Wilson.  Shortly thereafter, Defense Counsel filed an "Opposition to Government's Introduction of Victim Impact Statements and Motion to Recuse."  *See* Def.'s Mot. to Recuse, ECF No. [859]. In his Motion, Defense Counsel argued that the Government had "now so polluted the sentencing process by presenting to the Court uncharged, irrelevant and highly inflammatory material, that it is virtually impossible for Mr. Edwards to receive a fair sentencing consideration from the Court" and, thus, moved the Court to recuse itself from the sentencing.  *Id.* at 1.  The Government subsequently filed an Opposition to Defense Counsel's Motion to Recuse, *see* Govt.'s Resp. to Def.'s Opp'n. to Introduction of Victim Impact Statements, Opp'n. to Def.'s Mot. for Recusal, and Govt.'s Mot. to Strike Def.'s Pleading, ECF No. [860], and Defense Counsel filed a Reply, *see* ECF No. [861].  The Court now considers the merits of Defense Counsel's Motion.

In his Motion, Defense Counsel does not make any argument with regards to the 28 U.S.C. §

455 factors governing the disqualification of a federal judicial officer. Defense Counsel only argues, in one line, that the Court should recuse itself because "the Government has presented much irrelevant and inflammatory material to this Court that will make it virtually impossible for the Court to disregard such material at sentencing." Def.'s Mot. at 5. The remainder of Defense Counsel's Motion is devoted to rearguing the propriety of considering the four homicides and the home invasion in the Court's calculation of Defendant's sentence and the propriety of the Government's submission of the Victim Impact Statements in light of the crime for which Defendant is being sentenced. *Id.* at 3-5. Nevertheless, the Court must consider Defense Counsel's Motion within the context of the recusal statute and assumes, based on Defense Counsel's allegations, that he is arguing the Court should recuse itself on the basis of 28 U.S.C. § 455(a), which provides:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

28 U.S.C. § 455(a). In assessing section 455(a) motions for recusal, the D.C. Circuit applies an "objective" standard: "Recusal is required when 'a reasonable and informed observer would question the judge's impartiality.' " *S.E.C. v. Loving Spirit Found., Inc.,* 392 F.3d 486, 493 (D.C. Cir. 2004) (quoting *United States v. Microsoft Corp.,* 253 F.3d 34, 114 (D.C. Cir. 2001) (en banc)). Further, a party moving for recusal pursuant to Section 455(a) "must demonstrate the court's reliance on an 'extrajudicial source' that creates an appearance of partiality or, in rare cases, where no extrajudicial source is involved, . . . a deep-seated favoritism or antagonism that would make fair judgment impossible." *Middlebrooks v. St. Coletta of Greater Washington, Inc.,* 710 F.Supp.2d 77, 78 (D.D.C. 2010), *aff'd,* 2011 WL 1770464 (D.C. Cir. Apr. 4, 2011) (citations and internal quotation marks omitted). Importantly, "opinions formed by the judge on

15

the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky v. United States,* 510 U.S. 540, 554 (1994).

Upon careful review of Defense Counsel's Motion to Recuse, it is apparent that Defense Counsel seeks recusal of the Court on the basis of the Court's exposure to material presented to the Court in the course of court proceedings in this matter. As the Court discussed at length in the previous section, it is well-established that a sentencing judge may consider such uncharged conduct as that presented by the Government during the sentencing of Defendant Edwards. The Court has not and will not consider the other apparent source of Defendant's concern—the Victim Impact Statements related to one of the uncharged homicides—because the Victim Impact Statements are no longer relevant given the Court's finding that the Government did not meet its burden of proving the uncharged homicide by a preponderance of the evidence. Dissatisfaction with the material that the Court has allowed parties to introduce at a sentencing provides a proper ground for appeal—*not* recusal. *See Liteky*, 510 U.S. at 555 (finding that dissatisfaction with a court's rulings "almost invariably" provides a proper ground for appeal—not for recusal). Defense Counsel does not allege that the Court has relied on an "extrajudicial source" in determining Defendant's sentence. Defense Counsel offers no legal support for his proposition that the Court should recuse itself on the basis of being exposed to "inflammatory material" that was properly presented in the course of court proceedings. The proper avenue for Defense Counsel's dissatisfaction with the evidence properly introduced by the Government related to Defendant Edwards' sentencing is to appeal the sentencing decision, not to request the Court to recuse itself from the sentencing. Accordingly, the Court DENIES Defense Counsel's

Motion to Recuse.

## IV. CONCLUSION

For the reasons stated above, the Court finds that Defendant is subject to a sentence of not less than twenty years imprisonment nor more than life due to his prior conviction of Distribution of a Controlled Dangerous Substance. The Court further finds that although the evidence of uncharged crimes was properly presented to the Court during sentencing, the weight of the evidence is insufficient for the Court to find that the Government has met its burden of proving Defendant's participation in these crimes by a preponderance of the evidence. Accordingly, the Court has not considered this evidence of uncharged crimes in calculating Defendant's sentence. Finally, as the Court has only considered material that was legally presented to the Court, there is no basis for the Court to recuse itself from the sentencing of Defendant Edwards.

As a final matter, the Court notes that several of the pleadings related to the sentencing of Defendant Edwards were filed under seal. The November 5 and 7, 2013, evidentiary hearing was not conducted under seal other than a small portion of the hearing upon which the Court is not relying as relevant to its determination. All of the information the Court has discussed in this Memorandum Opinion is not under seal. The Court, by separate order, will require trial counsel to file a motion to seal any pleadings or their content going forward by no later than March 13, 2014.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

> */s/*
> **COLLEEN KOLLAR-KOTELLY**
> UNITED STATES DISTRICT JUDGE