## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

v.

GEZO GEONG EDWARDS,

    Defendant.

**Criminal No. 11-00129-01 (CKK)**
**Civil No. 17-2778 (CKK)**

## MEMORANDUM OPINION
(November 21, 2019)

Presently before the Court is *pro se* Defendant Gezo Geong Edwards' Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("Motion"). Defendant, Gezo Geong Edwards ("Mr. Edwards" or "Defendant") requests that this Court vacate, set aside, or correct his sentence based upon his claims of ineffective assistance of counsel. Mr. Edwards also includes a "Motion for Discovery" within his motion, seeking access to a code or program to open files and documents given to him by his former counsel.[1] Upon a searching review of the parties' submissions, the relevant authorities, and the record as a whole, the Court finds that Mr. Edwards is not entitled to the requested relief.[2] Accordingly, the Court shall **DENY** Mr. Edwards' Motion

---

[1] The Court will contact Mr. A. Eduardo Balarezo and instruct him to assist Mr. Edwards with accessing the materials.

[2] In connection with this Memorandum Opinion and the accompanying Order, this Court considered Def.'s Mot. to Vacate, Set Aside, or Correct Sentence ("Def.'s Mot."), ECF No. 975; the Government's Opp'n ("Gov't Opp'n"), ECF No. 1001; and Def.'s Reply, ECF No. 1017. Page references for documents filed with the Court refer to the pages assigned by the ECF system.

to Vacate, Set Aside, or Correct Sentence.

## I. BACKGROUND

The facts in this case may be summarized as follows: Mr. Edwards was a member of a wholesale cocaine trafficking organization operating in the District of Columbia (the "District") metropolitan area from January 2009 through April 26, 2011, when he was arrested as a result of an investigation by the Federal Bureau of Investigation and the District of Columbia Metropolitan Police Department. The Government obtained evidence of Mr. Edwards' participation in the organization through various methods, including pen registers, arranged undercover drug buys, judicially-authorized wiretaps, physical surveillance, and surveillance videos. Mr. Edwards and his co-conspirators acquired large quantities of cocaine in California, shipped it to the District, and distributed it to mid-level and street-level dealers. Mr. Edwards was responsible for contacting suppliers in California, ensuring that the multi-kilogram quantities of cocaine were shipped from California to the District, and even cutting and processing the cocaine. Probation Pre-Sentence Investigation Report at 7-11, ECF No. 716. Mr. Edwards was initially represented by Mr. Harry Tun,[3] but was later represented by Mr. A. Eduardo Balarezo during his pretrial and trial proceedings.

In a Superseding Indictment filed on June 16, 2011, Mr. Edwards was charged with one count of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(A)(ii), 846, and two counts of using, carrying, and possessing a firearm during a drug trafficking offense, in violation of 18 U.S.C. §

---

[3] Mr. Tun was found to have engaged in a practice known as "double-billing" and was later suspended from the practice of law in the District. *In re Tun*, 26 A.3d 313, 315 (D.C. 2011). Mr. Tun is not the subject of Mr. Edwards' ineffective assistance of counsel claims.

924(c)(1). Redacted Superseding Indictment, ECF No. 440.  The Superseding Indictment also included asset forfeiture provisions. *Id.*  The two counts of using, carrying and possessing a firearm during a drug trafficking offense were consolidated into one count before the case went to the jury.

On November 18, 2011, the Government filed the first of two bills of particulars to supplement the forfeiture allegations in the superseding indictment. First Bill of Particulars for Forfeiture, ECF No. 131. The Government described items subject to forfeiture as falling into four categories: money judgment, real property, United States currency, and personal property. *Id.* at 1-3. On December 13, 2011, the Government filed its second bill of particulars. Second Bill of Particulars for Forfeiture, ECF No. 136. Stemming from both bills of particulars, and with regard to Mr. Edwards, the Government requested a money judgment equal to the value of any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses charged, and listed the following assets as subject to forfeiture: $360,009.00 in U.S. currency; $6,380.00 in U.S. currency; $16,538.60 held at TD Bank NA, in the name of Lunar Funding Group, LLC; $6,064.90 held at TD Bank NA, in the name of The Gueong Edwards Family Trust[4]; one platinum ladies diamond engagement ring; and one ladies Rolex President, oyster perpetual datejust watch.

On February 22, 2012, Mr. Edwards, through counsel, filed a Motion for Release of Funds, ECF No. 192, alleging that without access to the funds the Government had seized from him, he could not retain counsel of his choice.  Mr. Edwards sought a hearing to determine the validity of

---

[4] In the first bill of particulars, the Government gave different values for the amounts held at TD Bank NA, even though those amounts did not add up to the total amount stated. The Court will use these values as it appears the Government miscalculated the values.

the Government's seizure of assets as he wanted to use those assets to pay a retainer fee that he and Mr. Balarezo agreed upon should the case proceed to trial. *Id.* The Government filed a Memorandum in Opposition, ECF No. 194, arguing that Mr. Edwards did not make a threshold showing that he lacked sufficient assets to pay Mr. Balarezo. The Court agreed and denied Mr. Edwards' request without prejudice. Order (Feb. 29, 2012), ECF No. 196.

Mr. Edwards also filed pretrial suppression motions, two counseled and one *pro se*, contesting the authorization of the Government's use of wiretaps throughout the investigation. This Court denied each of those motions. *See*, *e.g.*, *United States v. Edwards*, 889 F. Supp. 2d 1, 18 (D.D.C. 2012); *id.* at 23-29; *United States v. Edwards*, 904 F. Supp. 2d 7, 9-11 (D.D.C. 2012).

During its case-in-chief, the Government presented an expert witness and a confidential informant to link Mr. Edwards to the cocaine sold by Mr. Edwards and his co-conspirators. The expert witness testified as to the purity of the cocaine, and the confidential informant ("CI") testified as to the controlled drug buys. The defense did not present any expert testimony refuting the Government's claims about the origin of the cocaine nor any testimony about the common practices drug dealers use to conceal drugs from detection. Instead, Mr. Edwards' defense at trial questioned whether Mr. Edwards and his co-conspirators entered into an agreement, to prove conspiracy, and cast doubt on the character of the Government's witnesses who testified as to the controlled drug buys. *See* Trial Transcript ("Tr."). 14, 16-33, Nov. 15, 2012 P.M. Session, ECF No. 713.

On November 20, 2012, following a month-long jury trial, the jury found Mr. Edwards guilty on the charge of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, and acquitted him of the charge of using, carrying, and possessing a firearm. Verdict Forms, ECF Nos. 651/653. Following a separate forfeiture hearing, the jury found that

the Government proved that the following items constituted or were derived from proceeds that Mr. Edwards had obtained, directly or indirectly, as a result of the conspiracy charged in count one of Superseding Indictment: $360,009.00 in U.S. currency; $16,538.60 held at TD Bank NA, in the name of Lunar Funding Group, LLC; $6,064.90 held at TD Bank NA, in the name of The Gueong Edwards Family Trust; and one ladies Rolex President, oyster perpetual datejust watch. Partial Forfeiture Verdict Form, ECF No. 595; Final Forfeiture Verdict Form, ECF No. 597. The jury found that the Government did not prove that $6,380.00 in U.S. Currency was subject to forfeiture. Partial Forfeiture Verdict Form; ECF No. 595. The jury was unable to reach a decision as to the platinum ladies diamond engagement ring. Final Forfeiture Verdict Form; ECF No. 597.

On January 7, 2013, the Government filed a Notice of Forfeiture, ECF No. 670, seeking to forfeit the ring and the $6,380.00 in U.S. currency as substitute assets pursuant to 21 U.S.C. § 853(p). It later filed a Motion for Preliminary Order of Forfeiture, ECF No. 677, requesting forfeiture of all assets. Mr. Edwards, through counsel, opposed the Government's motion, arguing that it failed to establish any nexus between the ring and the charged offense. Def.'s Opp'n to Gov't Mot. For Preliminary Order of Forfeiture at 3, ECF No. 695. The Government filed a Second Motion for Preliminary Order of Forfeiture, ECF No. 771, seeking discovery authority to identify and locate assets subject to forfeiture, or substitute assets for such property. This Court granted the Government's Motion for Preliminary Order of Forfeiture. Preliminary Order of Forfeiture, ECF No. 779. The Court entered a Final Order of Forfeiture, ECF No. 867, on February 27, 2014, the day that Mr. Edwards had his sentencing.

The Court sentenced Mr. Edwards to life imprisonment and a ten-year term of supervised release. Judgment, ECF No. 876. Mr. Edwards filed a timely notice of appeal to the United States Court of Appeals for the District of Columbia Circuit, which affirmed his conviction. *United States*

*v. Williams*, 827 F.3d 1134, 1141 (D.C. Cir. 2016), *cert denied sub nom. Edwards v. United States*, 137 S. Ct. 706 (2017).  The Government moved subsequently to amend the Final Order of Forfeiture, ECF No. 947.  Mr. Edwards, then represented by Mr. David B. Smith, filed his Response to the Government's motion, ECF No. 952. The Court entered an Order of Forfeiture for Substitute Assets, ECF No. 957, granting the Government's motion to amend.

Mr. Edwards filed the present Motion to Vacate Sentence under 28 U.S.C. § 2255. ECF No. 975.  Prior to filing the instant Motion, Mr. Edwards did not file any previous petitions, applications, or motions with respect to the judgment after his direct appeal.  Mr. Edwards' Motion is premised on allegations of ineffective assistance of counsel related to his trial counsel, Mr. Balarezo.  Mr. Edwards' claims that Mr. Balarezo was constitutionally ineffective fall into six general categories: (1) Mr. Balarezo's handling of the criminal forfeiture aspect of the case both pre-trial and post-trial; (2) Mr. Balarezo's alleged actual conflict of interest; (3) Mr. Balarezo's failure to call an expert witness and to conduct independent testing to rebut the Government's claims regarding the source of the cocaine; (4) Mr. Balarezo's failure to accurately and adequately argue that the evidence obtained from the wiretaps should have been suppressed; (5) Mr. Balarezo's failure to challenge the sufficiency of the Superseding Indictment; and (6) the cumulative effect of Mr. Balarezo's ineffective representation of Mr. Edwards.  The Government filed its opposition, ECF No. 1001, and Mr. Edwards filed his reply to the Government's Opposition, ECF No. 1017.   With briefing concluded, Mr. Edwards' Motion is now ripe for determination.

## II. LEGAL STANDARD

Under 28 U.S.C. § 2255, a federal prisoner may file a motion to vacate, set aside or correct his sentence if he believes that the otherwise final sentence was imposed "in violation of the

Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). The standard for granting such a motion is high, as courts generally respect the finality of judgments and note the opportunities already afforded prisoners to raise objections during trial or on appeal. "[T]o obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). The petitioner has the burden of proof to demonstrate his right to such relief by a preponderance of the evidence. *United States v. Basu*, 881 F. Supp. 2d 1, 4 (D.D.C. 2012). A court shall grant a hearing to determine the issues and make findings of fact and conclusions of law "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

With few exceptions, a prisoner may not raise a claim as part of a collateral attack if that claim could have been raised on direct appeal, unless he can demonstrate either: (1) "cause" for his failure to do so and "prejudice" as a result of the alleged violation, or (2) "actual innocence" of the crime of which he was convicted. *Bousley v. United States*, 523 U.S. 614, 622-23 (1998). However, "[w]here a petitioner raises claims of ineffective assistance of counsel in a § 2255 motion, he need not show 'cause and prejudice' for not having raised such claims on direct appeal, as these claims may properly be raised for the first time in a § 2255 motion." *United States v. Cook*, 130 F. Supp. 2d 43, 45 (D.D.C. 2000) (citation omitted), *aff'd*, 22 F. App'x 3 (D.C. Cir. 2001).

A defendant claiming ineffective assistance of counsel may raise it for the first time as a collateral attack, rather than on direct appeal, but must show (1) "that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms," and (2) "that

this error caused [him] prejudice." *United States v. Hurt*, 527 F.3d 1347, 1356 (D.C. Cir. 2008) (citation omitted). For the first prong, "[j]udicial scrutiny of counsel's performance must be highly deferential" and defendant must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland v. Washington*, 466 U.S. 668, 689 (1984) (internal quotation marks and citation omitted). The Court must consider "counsel's overall performance," *Kimmelman v. Morrison*, 477 U.S. 365, 386 (1986), and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686. It is the petitioner's burden to show that counsel's errors were "so serious" that counsel could not be said to be functioning as the counsel guaranteed by the Sixth Amendment. *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

Furthermore, the defendant must meet the second *Strickland* prong and "affirmatively prove prejudice." *Strickland*, 466 U.S. at 693. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 669. To find prejudice, the petitioner must show that there is "a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (internal quotation marks and citation omitted). An ineffective assistance of counsel claim is defeated if the defendant fails to demonstrate either prong.

### III. DISCUSSION

A district court may deny a Section 2255 motion without a hearing when "the motion and

8

files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Whether or not to hold a hearing is a decision "committed to the district court's discretion, particularly when, as here, the judge who is considering the § 2255 motion also presided over the proceeding in which the petitioner claims to have been prejudiced." *United States v. Orleans-Lindsay*, 572 F. Supp. 2d 144, 166 (D.D.C. 2008); *see also United States v. Agramonte*, 366 F. Supp. 2d 83, 85 (D.D.C. 2005), *aff'd*, 304 Fed. App'x 877 (D.C. Cir. 2008). "The judge's own recollection of the events at issue may enable him summarily to deny a Section 2255 motion." *Agramonte*, 366 F. Supp. 2d at 85 (citing *United States v. Pollard*, 959 F.2d 1011, 1031 (D.C. Cir. 1992), *cert. denied*, 506 U.S. 915 (1992)). To warrant a hearing, the petitioner's Section 2255 motion must "raise 'detailed and specific' factual allegations whose resolution requires information outside of the record or the judge's 'personal knowledge or recollection.'" *Pollard*, 959 F.2d at 1031 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)).

Based on a review of the parties' pleadings and the entire record in the criminal proceeding, the Court finds that there is no need for an evidentiary hearing on the instant Motion.[5] As explained below, Mr. Edwards has not proffered detailed and specific factual allegations requiring this Court — which handled the trial and sentencing in this case — to look outside the record and hold a hearing on the issues raised in Mr. Edwards' Motion. Accordingly, the Court shall render its findings based on the parties' pleadings and the record in this case.

Mr. Edwards raises claims of ineffective assistance of counsel as it pertains to: (1) Mr. Balarezo's handling of the criminal forfeiture aspect of the case both pre-trial and post-trial; (2)

---

[5] Mr. Edwards also requests that counsel be appointed to him for an evidentiary hearing. Def.'s Mot. at 53. The Court denies Mr. Edwards' request because an evidentiary hearing is not warranted.

Mr. Balarezo's alleged actual conflict of interest; (3) Mr. Balarezo's failure to call an expert witness and to conduct independent testing to rebut the Government's claims regarding the source of the cocaine; (4) Mr. Balarezo's failure to accurately and adequately argue that the evidence obtained from the wiretaps should have been suppressed; (5) Mr. Balarezo's failure to challenge the sufficiency of the Superseding Indictment; and (6) the cumulative effect of Mr. Balarezo's ineffective representation of Mr. Edwards. The Court shall address each claim in turn.

### A. *Pre-Trial and Post-Trial Handling of the Criminal Forfeiture Aspect of the Case*

The Court will first address the pre-trial handling of the criminal forfeiture by Mr. Balarezo. Mr. Edwards claims that Mr. Balarezo "failed to present assets known by the government to be untainted, and assets that the government could not reasonably meet [the] probable cause [standard] to continue to freeze [them] under an assumption of possible forfeiture for future purposes." Def.'s Mot. at 18. Mr. Edwards claims that Mr. Balarezo was ineffective in his attempts to secure the return of assets, later determined to be untainted by the jury, to pay the remaining balance of Mr. Balarezo's retainer fee. Def.'s Mot. at 18-19, ECF No. 975.

In its Order denying Mr. Edwards' Motion for Release of Funds, the Court found that Mr. Edwards "did not provide any additional information regarding his assets, liabilities, sources of income, or other information relevant to his ability to retain legal counsel" other than merely stating that he did not have any available funds to pay Mr. Balarezo's retainer. Order (Feb. 29, 2012) at 4, ECF No. 196. Mr. Edwards' motion stated that "Mr. Edwards has demonstrated that he cannot retain counsel of his choice without the assets that have been seized or retrained [sic]." Mot. to Release Funds at 2, ECF No. 192. Mr. Edwards noted on February 22, 2012, that Mr.

Balarezo was his counsel of choice,[6] Def.'s Aff. in Supp. of Mot. for Release of Funds, ECF No. 192-1, and upon questioning by this Court during a status hearing in late July 2012, Mr. Edwards affirmed again that he was satisfied with his counsel.

The Court found that Mr. Edwards failed to provide information regarding the amount of funds he needed to retain Mr. Balarezo to proceed to trial, and that it could not determine whether the seized assets were necessary for Mr. Edwards to retain counsel of his choice. Order (Feb. 29, 2012) at 5, ECF No. 196. Furthermore, Mr. Edwards could not demonstrate that certain assets seized by the Government "would [have] be[en] available to [him] to pay for legal services" because probable cause was lacking. *Id.* at 6.

Mr. Edwards acknowledges that his initial motion to have those assets returned to him was denied because he failed to make the threshold showing that he lacked sufficient assets to pay Mr. Balarezo. Def.'s Mot. at 14, ECF No. 975. Nonetheless, Mr. Edwards argues that Mr. Balarezo was ineffective in his handling of the pre-trial motion because "[Mr. Balarezo] should have known the meaning of a threshold presentations [sic] and its legal requirements as a presentation in the Court to succeed in a 853 Pre-trial hearing." *Id.* at 17. In particular, Mr. Edwards argues that Mr. Balarezo should have informed this Court that (1) Mr. Edwards owed $20,000 to Mr. Balarezo; (2) his wife had to pay for the retainer fee by "taking [it] out [of] her 401(k) and credit cards;" (3) he pays child support; and (4) he is "saddled with mortgage payments." *Id.*

Mr. Edwards states further that he "instructed Balarezo specifically to move the Court for the hearing to return the untainted assets so that he could pay for an attorney to proceed to trial."

---

[6] Upon questioning by this Court during a status hearing in late July 2012, Mr. Edwards affirmed again that he was satisfied with his counsel.

Def.'s Reply at 6, ECF No. 1017. The record indicates that Mr. Balarezo did in fact move this Court for the return of these assets. Mot. for Release of Funds, ECF No. 192. Other than this, Mr. Edwards does not specify, with any degree of particularity, the exact circumstances of Mr. Balarezo's failure to include the now-identified financial information. The Court is left to speculate because Defendant does not indicate whether Mr. Balarezo asked Mr. Edwards for the financial information, whether that information was readily available at the time, or whether Mr. Edwards told Mr. Balarezo himself, amongst other relevant factors. Without this information, the Court will not engage in speculative arguments. *See United States v. Morrison*, 98 F.3d 619, 625-26 (D.C. Cir. 1996) (stating that summary denial is appropriate when an ineffective assistance claim is speculative).

Assuming, *arguendo* that Mr. Balarezo's omission of the now-identified financial information does constitute deficient performance, the Court finds that Mr. Edwards has failed to show that Mr. Balarezo's omission was prejudicial. It is not reasonably probable that, but for Mr. Balarezo's omission in the Motion to Return Funds, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 669.

The Government argues that Mr. Edwards was not entitled to use any of the seized assets to secure the services of Mr. Balarezo after it identified the property as subject to forfeiture. Gov't Opp'n at 17; ECF No. 1001. In addition, the Government argues that Mr. Edwards has failed to show exactly what Mr. Balarezo could have relied upon pre-trial to demonstrate that the Government lacked probable cause to seize those assets that were later determined by the jury to be untainted, i.e. $6,380.00 in U.S. currency and the platinum ladies diamond engagement ring. *Id.* at 18. There was not much more Mr. Balarezo could have done, given that a "probable cause [determination] had been found by the grand jury and the judicial officers who issued the search

warrants." *Id.*

The only evidence Mr. Edwards offers to demonstrate that he was entitled to use those assets is that the jury later concluded that the engagement ring and $6,380.00 in U.S. currency could not be tied to the conspiracy. Def.'s Mot. at 18. However, probable cause determinations require a significantly lower bar of proof than that employed by a jury at trial. *See United States v. Mechanik*, 475 U.S. 66, 72-73 (1986) (jury verdict renders harmless an error in a grand jury proceeding). Absent any evidence that probable cause was lacking as to the identified assets, which Mr. Edwards does not identify either in his Motion or Reply, Mr. Balarezo's failure to include Mr. Edwards' financial circumstances in the initial Motion to Return Funds did not prejudice him. Furthermore, even if Mr. Edwards intended to use those assets to pay the remaining balance of Mr. Balarezo's retainer fee, there is still no apparent prejudice to him because Mr. Balarezo continued to represent him throughout the trial. Defendant admits that his family paid the remaining balance of Mr. Balarezo's fees. Def.'s Mot. at 42.

The Court will now address Mr. Edwards' argument that Mr. Balarezo was ineffective in the post-trial criminal forfeiture proceedings. Mr. Edwards claims that Mr. Balarezo failed to move the Court to return the property that was determined by the jury not to be connected to the conspiracy. Def.'s Mot. at 49-50. The Government argues that Mr. Edwards' assertion is baseless. Gov't Opp'n at 19. It states that "there was nothing more that Mr. Balarezo could have done" because Mr. Balarezo challenged the Government's arguments regarding the property even though his argument did not persuade the Court. *Id.*; *see generally* Mem. in Opp'n to Mot. for Forfeiture of Property, ECF No. 695. The Government concludes that Mr. Balarezo's performance during this phase of the criminal forfeiture proceedings was neither deficient nor prejudicial. *Id.*

This Court ultimately granted the Government's request to forfeit the ring and the

$6,380.00 in U.S. currency as substitute assets. Order of Forfeiture for Substitute Assets at 3, ECF No. 957. The Court shall provide a brief account of how these assets became substituted. The Government first filed a Notice of Forfeiture, ECF No. 670, where it indicated that it would move to forfeit the ring and the $6,380.00 in U.S. currency as substitute assets pursuant to 21 U.S.C. § 853(p). In its subsequent Motion for Preliminary Order of Forfeiture, ECF No. 677, the Government sought discovery authority to identify and locate property to satisfy the money judgment. Mr. Edwards, through counsel, opposed the Motion for Preliminary Order of Forfeiture, arguing that the Government failed to establish a nexus between the later substituted assets and the charged offense. Def.'s Opp'n to Gov't's Mot. for Preliminary Order of Forfeiture at 3, ECF No. 695. The Government subsequently filed a Second Motion for Preliminary Order of Forfeiture, ECF No. 771, pursuant to a status hearing held on May 29, 2013. This Court granted the Government's Motion for Preliminary Order of Forfeiture, ECF No. 779, but the language of the Order proposed by the Government did not include any explicit authorization to substitute the ring and the $6,380.00 in U.S. currency as substitute assets.

This Court entered the Final Order of Forfeiture, ECF No. 867, on February 27, 2014. The Government then moved to amend the Final Order of Forfeiture pursuant to 21 U.S.C. § 853(p), to include the ring and $6,380.00 in U.S. currency, because after exercising due diligence in attempting to locate directly forfeitable property as direct proceeds from the conspiracy, it could not locate any property. Gov't's Mot. to Amend Order of Forfeiture to Include Substitute Assets at 6-7, ECF No. 947. The substitute assets would have partially satisfied a money judgment of $3,000,000, less amounts forfeited, instituted against Mr. Edwards. *Id.* at 1, 7. Mr. Edwards, then represented by Mr. David B. Smith, informed this Court that he would not consent to having the assets be substituted. Def.'s Resp. to Gov't's Mot. to Amend Order of Forfeiture to Include

14

Substitute Assets at 2, ECF No. 952. The Court granted the Government's motion to amend and concluded that the engagement ring and $6,380.00 in U.S. currency were subject to forfeiture as substitute property. Order of Forfeiture for Substitute Assets (Oct. 10, 2017) at 2, ECF No. 957.

While Mr. Balarezo was not the first to move this Court with regard to the assets, Mr. Balarezo did oppose the Government's position. Def.'s Opp'n to Gov't's Mot. For Preliminary Order of Forfeiture at 3, ECF No. 695. The Court does not see how the outcome would be different if Mr. Balarezo had moved to acquire the ring prior to the Government's filing if the Government had a sound basis to substitute the assets. Additionally, Mr. Edwards has not identified any other option available to Mr. Balarezo at the post-trial criminal forfeiture junction. Given Mr. Edwards' lack of specificity and/or detailed assertions about Mr. Balarezo's alleged misconduct and Defendant's failure to demonstrate a reasonable probability of a different result; *i.e.*, a return of ring versus the ring being used by the Government as a substitute asset, the Court shall deny Mr. Edwards' claims of ineffective assistance of counsel during the pre-trial and post-trial criminal forfeiture proceedings.

### B. *Alleged Actual Conflict of Interest*

The Court will now turn to Mr. Edwards' argument that Mr. Balarezo had an actual conflict of interest.[7] Mr. Edwards argues that he is a "victim of fraud perpetrated by his original counsel, Harry Tun," and that Mr. Balarezo "submitted the [Motion for Release of Funds] in a fashion that he knew would not survive . . . to prevent [Mr. Edwards] from procuring an attorney who would

---

[7] Mr. Edwards specifically argues that Mr. Balarezo's alleged actual conflict of interest affected his performance during the pre-trial and post-trial criminal forfeiture phase, pre-trial wiretap suppression proceedings, and the trial. Def.'s Mot. at 20-24, 46-48, 50-51. For the sake of clarity, the Court will only address whether an actual conflict of interest existed as this argument is central to Mr. Edwards' three specific claims regarding conflict of interest.

pursue actions against [Mr.] Tun . . . ." Def.'s Mot. at 20, 22. Mr. Edwards claims that he and Mr. Tun initially agreed to a retainer fee of $40,000, and that after Mr. Tun filed his Motion to Withdraw, Mr. Tun was to transfer the full $40,000 to Mr. Balarezo. *Id.* at 21. According to Mr. Edwards, only $20,000 was paid to Mr. Balarezo. *Id.* Mr. Edwards states that he told Mr. Balarezo that "he wanted to take action against [Mr.] Tun for defrauding the money out of him," to which Mr. Balarezo responded that "he [would] not pursue any actions against [Mr.] Tun" and that "he had nothing to do with obtaining the remaining $20,000 from Tun," but rather, "[Mr. Edwards] was responsible for paying the remaining $20,000." *Id.* at 22. Based on his own representations, Mr. Edwards does not claim that he entered into a consolidated agreement with Mr. Tun and Mr. Balarezo nor were the two attorneys affiliated with a single law firm. Accordingly, it was not Mr. Balarezo's responsibility to attempt to obtain the remaining $20,000.00 from Mr. Tun instead of obtaining payment directly from his client, Mr. Edwards.

Mr. Edwards concludes that "[Mr.] Balarezo knew that [Mr.] Tun was accepting money from [him] under false representation" and that Mr. Balarezo then submitted the Motion for Release of Funds "in a fashion that he knew would not survive." *Id.* As a result of the denial of the Motion for Release of Funds, Mr. Edwards argues that Mr. Balarezo should have "notified the Court that [Mr.] Tun was [his] original counsel . . . and that since [he] could not afford to proceed with [Mr. Balarezo] that the Court should [have] appoint[ed] [him] [new] counsel." Def.'s Mot. at 23, ECF No. 975.

The Government argues that Mr. Balarezo did not labor under an actual conflict of interest. Gov't Opp'n at 19. As support, it points to Mr. Edwards' failure to explain how Mr. Balarezo rendered ineffective assistance of counsel on the issue of the retainer fee and to the logical fallacy of Mr. Edwards' claims that Mr. Balarezo intentionally omitted information from the Motion for

Release of Funds so as to prevent Mr. Edwards from pursuing an action against his former counsel. *Id.* at 22-23. The Government argues that it does not make any sense for Mr. Balarezo to purposefully sabotage his own client's pleading when payment of his retainer was allegedly conditioned on the success of that pleading. *See id.* at 23.

In response, Mr. Edwards claims that "[Mr.] Tun's and [Mr.] Balarezo's scheme to shift representation and manipulate [his] funds paid to [Mr.] Tun for his representation, hampered [his] Sixth Amendment right to counsel of choice." [8] Def.'s Reply at 10, ECF No. 1017. Mr. Edwards claims that "to pursue actions against [Mr.] Tun would mean pursuing [Mr.] Balarezo as well because he was clearly involved in the beginning phase with [Mr.] Tun." *Id.* at 11. As evidence of Mr. Balarezo's involvement in the alleged scheme, Mr. Edwards claims the following: Mr. Tun was his initial counsel of choice; Mr. Tun brought Mr. Balarezo to sit in on a meeting, where "it was never discussed why [Mr.] Balarezo was there . . . nor did [Mr.] Balarezo in put [sic] anything during the meeting;" Mr. Tun came to subsequent meetings without Mr. Balarezo; Mr. Tun then brought Mr. Balarezo to notify Mr. Edwards that Mr. Tun was suspended from practicing law and that Mr. Balarezo would be taking over the case; and Mr. Balarezo "would not tell [Mr. Edwards] what [Mr.] Tun was sanctioned for, [Mr. Edwards] later had someone pull it up." *Id.* at 10-11.[9]

---

[8] It is not clear from the record if Mr. Tun was Mr. Edwards' original counsel of choice. Both Mr. Tun and Mr. Balarezo filed notices of appearance at the same time, and Mr. Tun even stated he was "representing Mr. Edwards as co-counsel." Notice of Attorney Appearance, ECF No. 5; Notice of Attorney Appearance, ECF No. 6; Mot. to Withdraw as Attorney ¶ 1, ECF No. 98.
[9] Mr. Tun was present and unaccompanied by Mr. Balarezo at Mr. Edwards' detention hearings and arraignments for the initial indictment. Apr. 29, 2011 Minute Entries for proceedings before Magistrate Judge Deborah A. Robinson, May 13, 2011 Minute Entry. On May 3, 2011, Mr. Balarezo filed a Notice of Consent to Detention, ECF No. 11. Mr. Balarezo was present and unaccompanied by Mr. Tun for the initial status conference and later for the arraignment on the Superseding Indictment. May 24, 2011 Minute Entry; June 22, 2011 Minute Entry for proceedings before Magistrate Judge Alan Kay. Both Mr. Balarezo and Mr. Tun were present for a status conference on the Superseding Indictment. July 27, 2011 Minute Entry. On September 9,

17

Mr. Edwards responds to the Government's illogical fallacy argument by stating that Mr. Balarezo was attempting to cover-up his own misconduct when he submitted the Motion to Release Funds. *Id.* at 11. Ultimately, Mr. Balarezo, according to Mr. Edwards, advanced his own and Mr. Tun's interests to the detriment of Mr. Edwards' interests. *Id.* Mr. Edwards proffers no evidence or further explanation for either of these generalized allegations.

Alleged conflict of interest claims "are a 'specific genre' of ineffective assistance of counsel claim." *United States v. Wright*, 745 F.3d 1231, 1233 (D.C. Cir. 2014) (citation omitted). "In order to establish a violation of the Sixth Amendment, a petitioner who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). An "actual conflict of interest" exists when a defense attorney is required to make choices "advancing [someone else's] interests to the detriment of his client's interest." *United States v. Gantt*, 140 F.3d 249, 254 (D.C. Cir. 1998). The "possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350. Furthermore, when the conflict concerns the payment of fees, "courts generally presume that counsel will subordinate his or her pecuniary interests and honor his or her professional responsibility to a client." *United States v. Taylor*, 139 F.3d 924, 932 (D.C. Cir. 1998) (citations omitted).

The Court finds that Mr. Edwards has not shown that Mr. Balarezo had an actual conflict of interest. Mr. Edwards' statements regarding Mr. Balarezo's alleged involvement in a scheme to deprive him of funds that he initially gave to Mr. Tun are speculative and conclusory allegations.

---

2011, Mr. Tun moved to withdraw as an attorney for Mr. Edwards. Mot. to Withdraw as Attorney, ECF No. 98. The Court granted Mr. Tun's motion. Order (Sep. 12, 2011), ECF No. 104.

Relying on Mr. Edwards' own statements, there is no indication that Mr. Balarezo was a party to the agreement between Mr. Edwards and Mr. Tun, or that Mr. Balarezo should have affirmatively sought the $20,000.00 balance of his retainer fee from Mr. Tun as opposed to seeking payment directly from Mr. Edwards. Nor do the facts that Mr. Edwards cites prove anything nefarious. In fact, the record appears to contradict Mr. Edwards' version of how Mr. Balarezo came to represent him during trial. Again, Mr. Edwards' argument is further complicated by the fact that on February 22, 2012, five months after Mr. Tun withdrew from the case, Mr. Edwards signed and submitted an affidavit to the Court stating that Mr. Balarezo was his counsel of choice, Def.'s Aff. in Supp. of Mot. for Release of Funds, ECF No. 192-1, and Mr. Edwards subsequently affirmed his satisfaction with counsel in July 2012. Because Mr. Edwards has failed to show that an actual conflict of interest existed, the Court shall deny his claim that Mr. Balarezo operated under an actual conflict of interest that adversely affected his representation of Mr. Edwards. *See United States v. Smoot*, No. 18-3007, 2019 WL 1246313 at *4 (D.C. Cir. Mar. 19, 2019) (dismissal of alleged conflict of interest claim is appropriate when defendant has failed to show that an actual conflict existed).

### C. Failure to Call Expert Witness and Conduct Independent Testing

The Court now turns to Mr. Edwards' contention that his counsel, Mr. Balarezo, was constitutionally ineffective for not obtaining a narcotics expert to testify and for failing to conduct independent testing of the cocaine offered at trial. Mr. Edwards first claims that "[his] counsel attempted to use the government's expert witness for his strategic and tactical defense without actually knowing whether that particular expert was capable or qualified or required to do the type of testing." Def.'s Mot. at 27-28; ECF No. 975. Mr. Edwards faults Mr. Balarezo's alleged misstep as the reason why "[Mr. Balarezo] attempted to use the government's expert witness for

his strategic and tactical defense." *Id.* "Clearly," according to Mr. Edwards, "[Mr. Balarezo] was insufficiently prepared for trial, and as a result did not call nor interview his own expert in support of his strategic and tactical decision." *Id.* at 28.

Second, Mr. Edwards claims that "[Mr. Balarezo] had reasons to support a strategic and tactical advance to cause the jurors to consider whether all the drugs that [were] sampled in the investigation came from [another co-conspirator in the case]." *Id.* "Had counsel conducted an independent investigation and consulted with his own expert, the next step of challenging the government's case under his defense would have been to present expert testimony concerning known tactics used by drug dealers and CI's [Confidential Informants] conducting controlled drug purchases." *Id* at 33. Ultimately, Mr. Edwards wanted Mr. Balarezo to have consulted with an expert on chemical profiling and another expert with knowledge on drug trafficking to illustrate the tactics that CI's employ when conducting controlled drug buys to contest the connection between the drugs found and the conspiracy. *See id.* at 34.

The Government argues that Mr. Edwards' argument fails to show that Mr. Balarezo's decision not to call an expert witness was either deficient or prejudicial under *Strickland.* Gov't Opp'n at 26. Specifically, the Government argues that Mr. Edwards has not shown that had the drugs been tested, the results would have revealed that the drugs seized were either not cocaine or from a co-conspirator. *Id.* Additionally, the Government claims that Mr. Edwards' argument is based purely on speculative thinking because he does not name a witness who could have testified nor provide the testimony that a hypothetical witness would have given. *Id.*

Under the *Strickland* test, a defendant "must overcome the presumption that, under the circumstances, a challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). A court "must indulge a strong presumption that counsel's conduct

falls within the wide range of reasonable professional assistance[.]" *Id.* In addition, "strategic choices made after [a] thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable." *United States v. Morrison*, 98 F.3d 619, 623 (D.C. Cir. 1996) (citation omitted). When a defendant challenges his counsel's choice of a defense, he must show that the choice was unreasonable and not constitutionally adequate given the circumstances. *See Johnson v. Alabama*, 256 F.3d 1156, 1177-1178 (11th Cir. 2001).

Mr. Edwards' contentions regarding Mr. Balarezo's failure to establish the source of the cocaine references the testimony provided by two of the Government's witnesses. The first witness was Kittie Wong, a senior forensic chemist at the Drug Enforcement Administration. Trial Tr. 26:8-18, Oct. 25, 2012 P.M. Session, ECF No. 619. Ms. Wong testified that, to her knowledge, any chemical profiling that would reveal where the cocaine originated from geographically was not performed on the sample she tested. Trial Tr. 47:25, ECF No. 619. Mr. Balarezo attempted to elicit testimony from her on cross examination regarding the Drug Enforcement Administration's possible policies in place with regard to testing for chemical profiling. Trial Tr. 44:21-22, ECF No. 619. This Court sustained the Government's objection to Mr. Balarezo's question because Mr. Balarezo was attempting to make the Government's expert witness a witness for the defense. Trial Tr. 46:4-22, ECF No. 619. Mr. Balarezo candidly admitted to the Court at side-bar that he was attempting to elicit testimony that the Drug Enforcement Administration did not perform a test that conclusively shows that the sample it tested matched another sample in the case to show that it only came from one of the co-conspirators as opposed to Mr. Bowman. Trial Tr. 45:16-21, ECF No. 619.

The second witness was Special Agent Naugle, who testified to participating in the purchase of cocaine by a confidential informant. Trial Tr. 50:16-19. Special Agent Naugle

testified that the confidential informant drove her own personal vehicle to the site of the drug buy. Trial Tr. 51:10-12. He also testified that he searched the confidential informant's vehicle prior to the purchase. Trial Tr. 51:13-15.

Mr. Edwards' argument that Mr. Balarezo committed himself to develop a defense to cast doubt on the source of the cocaine, and that calling an expert witness was crucial to the development of that defense, is simply not supported by the record. In fact, the record indicates that Mr. Balarezo pursued a different defense. Mr. Balarezo, in his closing arguments, repeatedly cast doubt on the character of the Government's witnesses who testified as to the controlled drug buys and cast doubt on the Government's evidence proving that Mr. Edwards and his co-conspirators agreed to enter into a conspiracy. *See* Trial Tr. 14, 16-33, Nov. 15, 2012 P.M. Session, ECF No. 713.

A claim of ineffective assistance of counsel based on the failure to consult and call an expert requires "evidence of what a scientific expert would have stated" at trial in order to establish prejudice. *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009); *see also Rodela-Aguiar v. United States*, 596 F.3d 457, 462 (8th Cir. 2010). Generally, courts will look to all of the evidence presented in the case and determine whether an expert witness could have altered the considerations and outcome of the jury. *See Dieter v. Florida*, 759 Fed. App'x 885, 891-892 (11th Cir. 2019). Mr. Edwards has not shown what any results of a chemical profiling analysis would reveal, nor has he demonstrated the relevance or significance that this potential evidence may have on establishing the defense he claims Mr. Balarezo should have pursued. Similarly, Mr. Edwards' claim that "[t]he jurors would have accepted the [drug trafficking] expert['s] opinion" is speculative and conclusory. Def.'s Mot. at 34.

The evidence presented at trial would have made the need for an expert witness or

independent testing insignificant. The Government presented video footage of Mr. Edwards opening a suitcase and counting what appeared to be kilograms of cocaine. Probation Pre-Sentence Investigation Report at 7, ECF No. 716. The video evidence also showed Mr. Edwards opening the packages and breaking them down into smaller quantities. *Id.* In addition, Mr. Edwards' fingerprints were found on the food processors recovered from the trailer and items recovered during the search of the storage unit, which would have been used in processing and packaging of the drugs. *Id.* at 9. Mr. Edwards does not demonstrate how an expert or independent testing would have made a difference.

The Court shall deny Mr. Edwards' ineffective assistance of counsel claims regarding Mr. Balarezo's failure to call an expert witness and conduct independent testing because Mr. Edwards has not shown that it constitutes "deficient performance" under *Strickland*. The record indicates that Mr. Balarezo's pursuit of a different defense than the one Mr. Edwards is now claiming that Mr. Balarezo should have employed was reasonable given the circumstances of the case. Mr. Edwards does not point to any evidence that the defense was unreasonable or not constitutionally adequate. Accordingly, because Mr. Edwards provides mere speculative arguments to support his claim, and his ineffective assistance of counsel claim based on counsel's failure to call an expert witness and conduct independent testing cannot proceed.

### D.  *Failure to Argue Suppression of Evidence from Wiretaps*

The Court now turns to Mr. Edwards' claim that Mr. Balarezo rendered ineffective assistance of counsel in the representations Mr. Balarezo made to this Court during Mr. Edwards' attempt to suppress information obtained by the Government through wiretaps. Mr. Edwards claims that he "continuously stressed to his counsel that the government and investigating agents were in violation of multiple, if not all, of the Title III requirements." Def.'s Mot. at 40. Mr.

Balarezo "addressed the Title III violation but narrowed the subsequent argument down to [18 U.S.C. §] 2518(1)(b)(iv) [the naming requirement]." *Id.* This was error, according to Mr. Edwards, because "[it] prevented the District Court from assessing the full scope of the deliberate violation perpetrated by the investigating agents [sic] omissions in their affidavits to procure the authority to wiretap." *Id.* at 41. Mr. Edwards stresses that "[this Court] was not privy to the information that was determined should have been provided to fully be aware of the circumstances based on Title III requirements for authorization," and that Mr. Balarezo is to blame. Def.'s Reply at 17, ECF No. 1017.

Mr. Edwards relies on the Court of Appeals' line of questioning during oral arguments on his direct appeal, its written opinion, and what Mr. Edwards' characterizes as the Government's policy change going forward with the naming requirement of 18 U.S.C. § 2518(1)(b)(iv). *See id.* at 42-43. Mr. Edwards claims that "the [D.C. Circuit] panel judges in their written opinion, stated that the government could have and should have included the omitted information in the wiretap affidavits . . . ." *Id.* at 42. He also states that the Government "since this investigation [changed] their policy and now name all persons believed to be involved in the crime." *Id.* Mr. Edwards concludes that, as a direct result of Mr. Balarezo's ineffectiveness in arguing that the Government did not meet the standards for the naming requirement, "neither this or the appellate Court provided an opinion with regard to the inclusion of the omitted information, [which violated Section] 2518(e)." *Id.* at 43.

Mr. Edwards' reliance on the Court of Appeals' decision as evidence that Mr. Balarezo was ineffective is misguided. This Court and the United States Court of Appeals for the District of Columbia Circuit found Mr. Edwards' arguments on the suppression of the wiretaps to be unconvincing. Gov't Opp'n at 30-31, ECF No. 1001. While the Court of Appeals did state that

"the Government did not provide the authorizing court with as complete a picture of its investigation as it could have," the court found that Government's omissions "were not material to Title III's necessity requirement" and that it "provided the bare minimum necessary to comply with Title III." *United States v. Williams*, 827 F.3d 1134, 1149-50 (D.C. Cir. 2016). To find that the Court of Appeals required the Government to provide more information than it did in its affidavits — from the Court of Appeals' language that it "could have" — would misstate its holding. Mr. Edwards does not point to anything that Mr. Balarezo could have done to warrant a different outcome other than the fact that it "was not until [Mr. Edwards'] *pro se* motions to the Court of Appeals that a judge considered the [Government's] deliberate omissions." Def.'s Mot. at 41.

Even if Mr. Balarezo failed to include the arguments — which Mr. Edwards claims he urged Mr. Balarezo to argue before this Court — in his pre-trial suppression pleadings, Mr. Edwards cannot prove that he was prejudiced. The Court of Appeals did consider this argument and rejected it. *Williams*, 827 F.3d at 1149-1150. Under the *Strickland* prejudice analysis, Mr. Edwards cannot prove that but for Mr. Balarezo's failure to include an argument on the omitted information in the wiretap affidavit, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 669. The Court of Appeals explicitly stated that it would not have been. *Williams*, 827 F.3d at 1149. Similarly, the fact that the Government changed its policy does not warrant a different outcome. Accordingly, the Court denies Mr. Edwards' claim of ineffective assistance of counsel during Mr. Edwards' attempt to suppress evidence obtained from the Government's use of wiretaps.

### *Failure to Challenge the Sufficiency of the Superseding Indictment*

The Court will now address Mr. Edwards' contention that Mr. Balarezo was ineffective for

failing to challenge the sufficiency of his indictment. Mr. Edwards claims that the "indictment does not list any means and manner or overt acts to with [sic] [he] is alleged to have committed the offense[s]." Def.'s Mot. at 48. Mr. Edwards argues that "[t]he indictment should have listed a directive of notice of means and manner based on a conspiracy [and the Section 924(c) charges]" and that this defect in the indictment "blind-sided" Mr. Edwards and prohibited him from developing a defense. *Id.* at 49.

The Government interprets Mr. Edwards' argument as a claim that Mr. Balarezo should have asked for a bill of particulars. Gov't Opp'n at 31. It argues that a bill of particulars was not necessary because it provided Mr. Edwards with "extensive discovery." *Id.* at 32. Additionally, Mr. Edwards fails to "identify with any precision in what way he was prejudiced by the level of specificity contained in the indictment." *Id.* The Government also argues that Mr. Edwards does not show how Mr. Balarezo was deficient or demonstrate how his case was prejudiced for failing to request a bill of particulars. Gov't Opp'n at 32-22, ECF No. 1001.

Mr. Edwards responds by arguing that "there was no indication in the indictment that [he] was involved in the sale of crack cocaine nor involved in any of the processing of crack cocaine after being sold through the form of powder." Def.'s Reply at 18, ECF No. 1017. Mr. Edwards takes issue with the fact that he was charged, under the superseding indictment, with conspiracy to distribute cocaine, while the Government tied him to a conspiracy to distribute cocaine base at trial. *See id.* at 18-20. He proffers that powder cocaine, and not cocaine base, was seized during the time of his arrest. *Id.* at 19.

Mr. Edwards claims that [Mr. Balarezo] should have sought and procured statements of facts and circumstances directly that would have [allowed] [Mr. Edwards] to advance a defense . . . ." *Id.* at 19. Mr. Edwards explains that he "did not specifically identify the use of [the bill of

particulars] as counsel's ineffectiveness," but that it is one way to show that the indictment was defective. *Id.* at 19-20. Mr. Edwards does not provide or identify another method. *Id.* According to Mr. Edwards, Mr. Balarezo did nothing to challenge the sufficiency of the indictment. *Id.* at 20.

Mr. Edwards was charged under Count One of the Superseding Indictment with Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or more of Cocaine, in violation of 21 U.S.C. § 846. Superseding Indictment at 2-3, ECF No. 28. The charge goes into further detail by alleging that Mr. Edwards distributed and possessed with intent to distribute "mixtures and substances containing a *detectable amount of cocaine*." *Id.* at 3 (emphasis added).

The distinction that Mr. Edwards attempts to draw out between powder cocaine and cocaine base is inconsequential for purposes of analyzing the indictment. It is clear that he was given notice about "cocaine," to include both powder cocaine and cocaine base. Mr. Edwards is also unable to demonstrate with any particularity how Mr. Balarezo's failure to challenge the sufficiency of the indictment was deficient and prejudicial. Furthermore, any possible defect in the indictment that relates to the gun charges is not prejudicial as Mr. Edwards was found not guilty on the consolidated gun charge. Jury Verdict Form at 2; ECF No. 651. Accordingly, Mr. Edwards' claim that Mr. Balarezo rendered ineffective assistance of counsel for failing to challenge the sufficiency of the indictment is without merit.

### E.  Cumulative Effect of Ineffective Assistance of Counsel

Finally, the Court will address whether Mr. Edwards has established that the cumulative impact of his claims of ineffective assistance of counsel warrant him relief. Mr. Edwards states that he "has set-forth [sic] claims that counsels [sic] performance was below the obj[ective] standard required by the Constitution." Def.'s Mot. at 50, ECF No. 975. He argues that "each of the multiple professionally unreasonable acts and omissions of counsel prejudiced him and that he

was clearly prejudiced by the cumulative impact of the multiple deficiencies." *Id.* at 51.

The Government argues that Mr. Edwards has "cumulat[ed] meritless arguments [that] does not transform them into something they are not." Gov't Opp'n at 34, ECF No. 1001. Specifically, the Government states that Mr. Edwards has not shown that Mr. Balarezo performed his duties under an actual conflict of interest or engaged in deficient representation that prejudiced Mr. Edwards. *Id.* It further states that "[Mr. Edwards is] unable to show how his lawyer could have been ineffective by aggregating meritless claims." *Id.*

In response, Mr. Edwards claims that he "has pleaded, presented evidence, and argued applicable law to demonstrate that his conviction and sentence is violative of his Sixth and Fifth Amendment constitutional right [sic]." Def.'s Reply at 21, ECF No. 1017. He goes on to state that "[t]he government offers no facts nor support [to] rebut the conflict [claim] and their contentions as to the remaining claims are without merit." *Id.* at 20.

The U.S. Court of Appeals for the District of Columbia Circuit has not yet had an opportunity to decide whether a cumulative prejudice analysis is appropriate under the *Strickland* standard on habeas review. Other sister circuits are split. *Compare Williams v. Washington*, 59 F.3d 673, 682 (7th Cir. 1995) (cumulative prejudicial analysis allowed), *Harris ex rel. Ramseyer v. Wood*, 64 F.3d 1432, 1439 (9th Cir. 1995) (same), *Rodriguez v. Hoke*, 928 F.2d 534, 538 (2d Cir. 1991) (same), *with Fisher v. Angelone*, 163 F.3d 835, 852 (4th Cir. 1998) (not allowed), *Wainwright v. Lockhart*, 80 F.3d 1226, 1233 (8th Cir. 1996) (same).

The Court need not address whether a cumulative prejudice analysis is appropriate in this case because Mr. Edwards has not demonstrated that he was prejudiced by any of the claims he makes. Because Mr. Edwards has failed to show that even one of his claims of ineffective assistance of counsel involved prejudice to him, the Court shall deny Defendant's claim that the

cumulative impact of Mr. Balarezo's actions or omissions warrant Mr. Edwards relief.

## IV. CONCLUSION

For all of the foregoing reasons, the Court shall **DENY** Mr. Edwards' [975] Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. Furthermore, no Certificate of Appealability shall issue from this Court. To the extent Mr. Edwards intends to file an appeal, he must seek a Certificate of Appealability from the United States Court of Appeals for the District of Columbia Circuit in accordance with Federal Rule of Appellate Procedure 22.

An appropriate Order accompanies this Memorandum Opinion.

_____
/s/
**COLLEEN KOLLAR-KOTELLY**
UNITED STATES DISTRICT JUDGE
